[S. F. No. 1259.    Department One.—June 17, 1899.]

THOMAS KYLE and B. SARLE, Executors, et cetera, Respondents, v. MARY CRAIG, Appellant.

ACTION TO ENFORCE TRUST—DEMURRER TO COMPLAINT—SEPARATE COUNTS AS TO REAL AND PERSONAL PROPERTY.—A complaint in an action to enforce a trust in real and personal property is not demurrable on the ground that the facts concerning the trust as to the real estate, and as to the personal property, are separately set forth in two counts for one cause of action. No such ground of demurrer is specified in section 430 of the Code of Civil Procedure; and no ground of demurrer not specified in that section can be considered.

ID.—MOTION TO COMPEL ELECTION.—The defendant is not prejudiced by the arrangement of such complaint in two counts, where the facts as to the trust are fully set out; and the defendant cannot, by motion, compel the plaintiff to elect to proceed either upon the trust as to the real estate, or upon that as to the personal property.

ID.—SUFFICIENCY OF CAUSE OF ACTION—DONATION IN VIEW OF DEATH —RECORD OF UNDELIVERED DEED—REFUSAL OF RETRANSFER.— A complaint showing that the plaintiff, in expectation of immediate death, assigned to the defendant, who was his trusted sister, certain savings bank deposits, and further executed and acknowledged a deed of certain real estate to the defendant, which was never delivered; that the assignment and deed were made with the understanding that, after plaintiff's death, the property should be disposed of by the defendant according to certain instructions given by the plaintiff; that there was no consideration for the transfer; that the defendant, without authority or knowledge of the plaintiff, obtained possession of the deed, and recorded it; and that, upon the recovery of the plaintiff, defendant refused to retransfer the real or personal property to plaintiff upon demand therefor, and claimed to own the

entire property, states a cause of action to enforce a trust, both as to the real and as to the personal property.

ID.—AMBIGUITY—FAILURE TO SET OUT INSTRUCTIONS.—The complaint is not demurrable for ambiguity in failure to set out the instructions which were given in view of death, to be carried out after the death of the plaintiff. The instructions were wholly immaterial, in view of the fact that the plaintiff did not die, but lived to reclaim the property.

ID.—EVIDENCE—DANGER OF DEATH OF PLAINTIFF—LEADING QUESTIONS—DISCRETION.—The allowance of leading questions to the physician who attended the plaintiff during his illness, as to the danger of his death at the date when the deposits were transferred and the deed executed, was in the discretion of the trial court; and a judgment for the plaintiff will not be reversed upon that ground, there being no manifest abuse of discretion, and no error in regard to a material matter affecting the substantial rights of the parties.

ID.—RES GESTAE—INTERVIEW WITH BUSINESS MANAGER.—Evidence is admissible as part of the *res gestae*, to show that the plaintiff, when ill and not expected to live, sent for his business manager, and interviewed him, stating that he wished to make a will in favor of his sister, the defendant, and subsequently stated that he had concluded to make a deed, and informed the manager of what he wanted his sister to do with the property in case he should die.

ID.—MOTIVES AND INTENTIONS OF PLAINTIFF—DECLARATIONS—TESTIMONY OF PLAINTIFF.—The issue being as to whether the alleged transfers were made without consideration in expectation of immediate death, plaintiff's belief that death was impending, and his motives and intentions in making the transfers, were material to the issue, and his declarations then made, showing his belief, motives, and intentions, and his own testimony as to what his belief, motives, and intentions then were, are competent evidence.

DEPOSITION—LEADING QUESTIONS—WAIVER OF OBJECTION.—Where both parties were present at the taking of a deposition, the objection that questions were leading must be taken at the time of the interrogatory, and if no objection was then made to the form of the interrogatory, it cannot be urged at the trial.

ID.—POWER OF NOTARY TO EMPLOY SHORTHAND REPORTER — TRANSCRIPT OF TESTIMONY—CERTIFICATE.—The notary taking a deposition may either appoint a clerk or a shorthand reporter to take down the testimony; and the fact that such reporter was not appointed by the court, and that his transcript of the testimony into longhand was objected to by defendant's counsel, is immaterial, if the certificate of the notary states that the transcription into longhand was by the notary carefully read to the witness, and, being by him first corrected, was subscribed by the witness in the presence of the notary.

NEW TRIAL—STATEMENT—SPECIFICATIONS—INSUFFICIENCY OF EVI-
DENCE.—Specifications in a statement on motion for new trial of
the insufficiency of the evidence to justify the findings, must
state the particulars in which the evidence is claimed to be
insufficient, and a mere general statement that the evidence is
insufficient to justify a finding should be disregarded.

APPEAL—ARGUMENT—POINTS NOT URGED IN BRIEF.—Where the ap-
pellant does not point out in his brief any particular issue or,
issues upon which the court omitted to find, or what particu-
lar finding or findings were unsupported by evidence, and the
particulars in which they were unsupported, it is not the duty of
the appellate court to investigate those questions.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco, and from an order denying a
new trial.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion.

F. J. Castelhun, for Appellant.

James H. McKnight, and Charles L. Patton, for Respond-
ents.

COOPER, C.—This action was brought by one Robert Bright
to have it adjudged that the defendant holds the legal title to
certain real estate, described in the complaint, in trust for plain-
tiff, and that defendant be required to execute and deliver to
plaintiff a good and sufficient deed to said real estate, and also
to recover certain moneys that are alleged to be the property of
plaintiff, and held by defendant in trust for him.   The facts,
as shown by the record and found by the court, are in substance
as follows: The original plaintiff, Robert Bright, and the de-
fendant were brother and sister, and for many years prior to
June 7, 1895, they had lived together in the same house and
on the most friendly and confidential relations.   The plaintiff
was then about seventy-eight years old and the defendant
about seventy-six.   About the 31st of May, 1895, the original
plaintiff was afflicted with a severe stroke of paralysis and be-
came so ill that on the seventh day of June following he was in
danger and expectation of immediate death, and while in such
condition he assigned to defendant deposits amounting to about
seventeen thousand dollars in certain savings banks, and also
executed and acknowledged a deed to defendant of certain real

estate in the city and county of San Francisco particularly described in the complaint. The assignment and deed were made with the understanding that defendant should, after the death of the original plaintiff, dispose of the property according to certain instructions given to defendant by said plaintiff. The deed was never delivered to defendant, but was placed in a drawer of a table in a room then occupied by said plaintiff, and afterward, without the knowledge or consent of said plaintiff, defendant took the deed from the said drawer, and on January 7, 1896, placed the same of record with the county recorder of the city and county of San Francisco. There was no consideration for the said deed or the transfer of said bank accounts. After the ninth day of June, 1895, the plaintiff ceased to be in danger of immediate death, and afterward he demanded of defendant that she deed, assign, and transfer the said property back to plaintiff, all of which she refused to do. She not only refused to reconvey the property, but claimed to be the owner of it and seised in fee of the real estate. The plaintiff, on the second day of March, 1897, and before the trial of this case, died, and on the eighth day of March, 1897, the present plaintiffs, as special administrators of his estate, were substituted, and plaintiffs are now the executors of the last will and testament of the original plaintiff. After the date of the transfers of said real and personal property, and prior to the death of the original plaintiff, defendant had laid out and expended two thousand dollars for taxes, insurance, nursing of plaintiff, et cetera. Upon these facts the court below deducted two thousand dollars from the amount of the said deposits, and gave judgment against defendant for the balance, and that the defendant has no right, title, or interest in said real estate, and that defendant deliver up the said deed to be canceled and be enjoined from setting up any claim to the lands therein described. A motion was made for a new trial, which was denied, and this appeal by defendant is from the judgment and order. The record is quite voluminous, and counsel for appellant has filed a brief of thirty-four printed pages. Counsel for plaintiff have not seen fit to file a reply, and thus the full labor of investigating all the questions raised in appellant's brief is thrown upon this court with no assistance from plaintiff's counsel.

Defendant's counsel urges that the demurrer to the amended complaint should have been sustained upon several different grounds. The complaint sets forth what is claimed to be the facts in two counts, the first count being in regard to the real estate and the second count in regard to the deposits in the bank. The main facts are set forth by the pleader "as having occurred June 7, 1895, as a part of the same transaction." The principal ground of demurrer, and the one first urged, is "that said complaint sets up two counts for one cause of action." This is not one of the grounds of demurrer laid down in the code (Code Civ. Proc., sec. 430), and no others can be considered. (*Hentch v. Porter,* 10 Cal. 558; *Bernero v. South Bend etc. Co.,* 65 Cal. 386.) The cases cited in appellant's brief relate to where a single act or transaction is made the subject of separate actions. Here we have only one action in regard to one transaction, although the same is set forth in two separate counts. The counts might be both considered together as a narration of the facts upon which plaintiff relies for a recovery. If the facts are fully set out, although given in what the pleader calls separate counts, each numbered into separate paragraphs, it can make no difference and cannot injure or prejudice the defendants in any way. It is next claimed that the first count does not state a cause of action because it is an attempt to have the court declare a transaction in regard to real property to have been *donatio causa mortis,* and that a gift in view of death applies to personal property only.

The answer to this is that the pleader states that the deed was without consideration and was never delivered to defendant. If a grantee named in a deed, to whom the deed was never delivered, and for which there was no consideration, wrongly gets possession of the deed and places it upon record, and then claims to own the property therein described, it seems to us that the grantor, upon stating and proving these facts, would be entitled to relief. The point is further urged that the complaint is uncertain and ambiguous in that it avers that the defendant would dispose of the real and personal property in accordance with certain written instructions, and that the same are not set out and it is impossible to determine what they were. The complaint sets forth that as the transfers were made in view of

immediate death, that defendant was to carry out certain written instructions in case plaintiff should die. As the plaintiff did not die, but lived to claim his property, and as the gist of the action is to compel a reconveyance, the written instructions are immaterial. There is no claim that any written instructions should be enforced, and no claim as to anything caused by the want of such instructions being carried out. We think the demurrer was properly overruled. For the reasons given in regard to ruling upon the demurrer it was not error for the court to refuse to compel the plaintiff to proceed upon one count only of his complaint. It is claimed that the court committed many errors in overruling defendant's objections to testimony. There are eighty-seven of these assignments of errors in the transcript, argued under twenty-seven different assignments in appellant's brief. In the first assignment it is said that the court erred in overruling the defendant's objections to three questions asked of the witness, Dr. Mays. The witness had attended Robert Bright more or less for five years. He was called in to see him professionally about May 21, 1895, and attended him about twice a day until June 17th. The questions were then asked of the witness:

"Q. Did you find him in the same condition during that time?" The witness answered: "His condition varied, improving slightly after a few months; during the first week following the 30th of May his condition became worse."

"Q. As a matter of fact, doctor, was Robert Bright in danger of death at that time?" The witness in answer said: "There was considerable danger of death. For some time I thought death might ensue at any time." . . . .

"Q. Did he take these opiates in sufficient quantities to impair his capacity?" The witness answered: "No, simply sufficient to allay the pain."

All these questions were objected to upon the sole ground that they were leading, and the objection overruled. This court would not reverse a case for error in the matter of admission of testimony unless the errors were in regard to a material matter affecting the substantial rights of the parties. (*Kiler v. Kimbal*, 10 Cal. 267.) It is a well-settled rule in this state that the allowance of leading questions is in the discretion of the trial

court, and that a case will not be reversed on such ground un-
less there is a manifest abuse of discretion. (*White v. White,* 82
Cal. 452.)

We think, while the questions were leading, that there was
not such an abuse of discretion as would warrant us in holding
the rulings to be reversible error. One Capp had been for
many years, and was on the 4th of June, 1895, the agent and
business manager of the said Robert Bright. He was sent for by
Bright on said day and for the purpose of having some dis-
position made of his property in case he should die. When
called as a witness, after some preliminary questions, and after
stating that in response to a call from a messenger he went to
the house where Bright was staying, this question was asked:
"Q. State what conversation you had with Mr. Bright on
this occasion." The question was objected to upon the ground
"that is was incompetent, irrelevant, and immaterial." The ob-
jection was overruled and exception taken. It is said that this
ruling was error, for the reason that the conversation was not
had in the presence of defendant, and that even if she had been
present it was irrelevant and immaterial, and, further, that a
deed cannot be invalidated by subsequent declarations of the
grantor. We think the evidence was relevant and material as a
part of the *res gestae.* The witness had been called upon to
make certain arrangements about Bright's property in case he
should die. It seems Bright wanted to make a will and at first
talked about that, but afterward concluded to make a deed to
his sister, and gave the witness a statement of what he wanted
his sister to do with the property in case he should die. It
was alleged in the complaint that the transfers were made with-
out consideration and in expectation of immediate death. The
answer took issue upon this. It was, therefore, necessary to in-
quire fully into the acts done by Robert Bright, and his motives
and intentions. The very question to be determined was as to
whether or not the transfers were made with a belief on the
part of Robert Bright that he was nearing the presence of the
monster, Death. The testimony was not as to what Bright
said after the transfers, but what he said before he made them,
and as a part of what was to be done.

Where it is necessary to inquire into the motive of a particular

CXXV. CAL.—8

act, and the intention of the person who did the act, proof of what the person said at the time of doing it is admissible in evidence for the purpose of showing its true character. (1 Greenleaf on Evidence, sec. 108; 1 Rice on Evidence, sec. 211b; 1 Phillips on Evidence, 233.) In the case of *Lund v. Tyngsborough,* 9 Cush. 43, the court, in a very learned and exhaustive review of the law as to the admissibility of hearsay evidence, said: "Perhaps the most common and largest class of cases in which declarations are admissible is that in which the state of mind or motive with which any particular act is done is the subject of inquiry," and after discussing the many rules and exceptions laid down the rule "When the act of a party may be given in evidence, his declarations, made at the time, and calculated to elucidate and explain the character and quality of the act, and so connected with it as to constitute one transaction, and so as to derive credit from the act itself, are admissible in evidence. The credit which the act or fact gives to the accompanying declarations as a part of the transaction, and the tendency of the contemporary declarations as part of the transaction to explain the particular fact, distinguish this class of declarations from mere hearsay."

It is earnestly contended that the court erred in allowing Bright to testify, under the objections of defendant, as to his intentions when he executed the deed and transfers of property to defendant. We think the testimony was competent and material. The intentions and motives of Bright were the material matters being investigated. In such cases the universal rule is to receive the witnesses' testimony as to his intentions. (Wharton on Evidence, secs. 482, 508, 955; *Snow v. Paine,* 114 Mass. 526; *Barnhart v. Fulkerth,* 93 Cal. 499.) The objections and exceptions in the transcript from the seventh to the eighty-seventh, inclusive, are to questions asked in the deposition of the plaintiff, which was admitted and read in evidence. A large number of questions are objected to upon the ground that they are leading. It does not appear from the record whether or not the objections were made at the time of taking the deposition, but it does appear that counsel for defendant attended at the examination. The code (Code Civ. Proc., sec. 2032) lays down the rule that in taking a deposition, if the par-

ties attend at the examination, no objection to the form of an interrogatory shall be made at the trial unless the same was stated at the time of the examination.

We have examined all the assignments as to errors in receiving testimony under the objections of defendant, and we do not find any one of sufficient importance that we think we would be justified in holding the rule prejudicial error.

The deposition of Robert Bright was offered in evidence, and counsel for defendant objected to it being read upon the ground "that it was taken in shorthand by a shorthand reporter not appointed by the court, and transcribed into longhand by such reporter against the objections of defendant's counsel made at the time." The court below asked counsel for defendant if there was any claim that the deposition was not correctly transcribed, and counsel said: "That as to that he could not say." The certificate of the notary shows that when the deposition was transcribed into longhand it was by the notary carefully read to the witness, and, being by him first corrected, was subscribed by the witness in the absence of the notary. It is claimed that the words of the witness must be written down by the notary unless the parties agreed upon a different mode. (Citing Code Civ. Proc., sec. 2006.)

Counsel says in his brief: "It is not claimed that the notary might not have employed a clerk to write down the questions and answers with a pen or machine, but it was improper to employ the sister of counsel for plaintiff." It does not appear, except in the brief of counsel, that the sister of counsel for plaintiff was employed as shorthand reporter. If the notary could employ a clerk to write down the questions and answers with a machine, we fail to see why a reporter could not take down the questions and answers. When a witness gives an answer and it is written out in longhand, it could not be a valid objection that the answer remained in the memory of the writer until he committed it to paper. But clearly when an answer is given by a witness it remains with the person writing and in his memory until it is transferred to paper. If the writer should take it down in characters only known to himself, and thus preserve the memorandum of each question and answer until he afterward had time to write it down in longhand, we fail to see why,

when finally transferred to longhand, it is not written down as completely as if done as the words fell one by one from the lips of the witness. We think the code clearly contemplates this course. (Code Civ. Proc., sec. 2038.) The language is, "Upon the appearance of the witness the judge or justice must cause his testimony to be taken in writing," et cetera. It is also provided that the deposition, when completed, must be carefully read to the witness and corrected if desired and then subscribed by him. This makes the reading, correcting, and signing the necessary and material thing to be done, and it was done in this case. The object of requiring the witness to sign the deposition is to make him responsible for its phraseology, for by signing he adopts the language as his own. (Weeks on Law of Depositions, sec. 321.) It is claimed that the court failed to find on some of the material issues. Our attention is not called to any material issue upon which there is no finding, and as counsel has not seen fit to point out in his brief the particular issue or issues upon which there should have been a finding, it cannot be expected that we will go through the record on an independent voyage of discovery.

Defendant's counsel assigns some fifteen errors in which he claims the evidence is insufficient to justify the findings. The only specification wherein the evidence is alleged to be insufficient is, "The evidence is insufficient to justify," et cetera. Unless the particulars in which the evidence is said to be insufficient to justify any particular finding or part thereof are pointed out in the assignment of error, we cannot notice the assignments here. (Code Civ. Proc., sec. 659; *De Molera v. Martin*, 120 Cal. 544.)

And even if the specifications in the assignments of error were sufficient, counsel has not pointed out in his brief and called our attention to the particular finding or findings claimed to have no support in the evidence, and the particulars in which such finding is not supported by the evidence. In such case we do not deem it our duty to investigate the questions as to the insufficiency of the evidence.

We advise that the judgment and order be affirmed.

Chipman, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Dyke, J.

Hearing in Bank denied.