[Civ. No. 24328.   Second Dist., Div. Two.   July 1, 1960.]

MAURICE M. MILLER et al., Respondents, v. ERWIN E. HASSEN et al., Appellants.

Sidney E. Baskin and Harry B. Seelig for Appellants.

Irmas & Rutter, Sidney E. Horvitz and William A. Rutter for Respondents.

RICHARDS, J. pro tem.*—Appeal by defendants Erwin E. Hassen, Birdie B. Hassen and Betty Stein from an adverse judgment in favor of plaintiff Country Club Villa, Inc., against said defendants for $35,088.45 compensatory damages; in favor of plaintiff Country Club Villa against defendant Erwin E. Hassen for $4,000 and defendant Betty Stein for $1,000 punitive damages, and in favor of plaintiffs Maurice M. Miller and Cecelia L. Miller against defendants Erwin E. Hassen and Birdie B. Hassen for $1.00 compensatory damages, in an action for compensatory and punitive damages for fraud and deceit and for breach of contract.

Plaintiffs Maurice M. Miller and Cecelia L. Miller (herein referred to as the Millers) are husband and wife and are officers, directors and owners of two-thirds of the capital stock of plaintiff Country Club Villa, Inc. (herein referred to as Country Club Villa), a family corporation. Erwin E. Hassen and Birdie B. Hassen (herein referred to as the Hassens) are husband and wife. Defendant Betty Stein is the sister of Erwin E. Hassen. Zenith National Insurance Company (herein referred to as Zenith) is a corporation engaged solely in underwriting industrial accident insurance. At all times involved herein a majority of the Zenith stock was owned by E. E. Hassen Foundation, a nonprofit corporation, and the remainder was owned by Erwin E. Hassen's two brothers and his sister, defendant Betty Stein. The officers and directors of E. E. Hassen Foundation are the defendant Erwin E. Hassen and his two brothers, and at all times mentioned, said foundation was indebted to the Hassens in a sum in excess of $800,000.

A chronology of the facts out of which this litigation grows is as follows:

December 22, 1947: Country Club Villa gave its note to Guarantee Mutual Life Company, a corporation, for $440,000 principal and interest in monthly installments of $3907.20 or more, secured by a first trust deed on the real property situated at the southwest corner of Rosewood Avenue and Rossmore Avenue, Los Angeles. This note was personally guaranteed by

---

*Assigned by Chairman of Judicial Council.

the Millers and additionally secured by a chattel mortgage. The trust deed required the maintenance by the trustor of a reserve for taxes, the agreed amount of which reserve was $1500 per month.

1948: The Casablanca Hotel was erected upon said real property.

January 22, 1953: Country Club Villa gave its note to the Millers for $125,000 secured by a second trust deed on the hotel property and a second chattel mortgage on the hotel furniture.

January 26, 1953: Country Club Villa sold the Casablanca Hotel to Frank Fishman and Gloria Fishman subject to the first and second trust deeds and chattel mortgages. As part of the purchase price, the Fishmans gave back their note to Country Club Villa for $425,361.55, payable in monthly installments secured by a third trust deed on the hotel property.

February 27, 1953: The Fishmans sold and conveyed the Casablanca Hotel to the Hassens, subject to the first, second and third trust deeds and to the first and second chattel mortgages, and, as a part of the purchase price, the Hassens gave the Fishmans their note for $194,000 secured by a fourth trust deed on the hotel property.

January 29, 1954: Guarantee Mutual Life Company sold and assigned to Zenith the $440,000 note executed by Country Club Villa and secured by the first trust deed.

May 11, 1954: Early in 1954 an action for judicial foreclosure of the second trust deed and the second chattel mortgage was brought by the Millers against the Hassens. On May 11, 1954, an agreement to compromise said litigation was entered into between the Hassens and the Millers. Said agreement provided, *inter alia,* that defendant Erwin E. Hassen would pay all of the amounts coming due under the terms of the first trust deed note then owned by Zenith and would furnish the Millers receipts or other evidence of such payments within 10 days after the due date of each payment as such payments accrued. At the time of entering into said compromise agreement, Erwin E. Hassen represented to the Millers that the then balance due under said first trust deed note was $301,613.12. As security for the performance of said compromise agreement, the Hassens executed and delivered to the Millers a fifth trust deed upon the hotel property.

October 22, 1954: Country Club Villa filed and recorded a Notice of Default and Election to Sell under the third trust deed.

November 5, 1954: Zenith elected to declare due the then balance under the first trust deed note for default in payment of taxes, principal and interest.

February 22, 1955: Country Club Villa bought in the hotel at the foreclosure sale on its third trust deed for $330,000, and, thereafter, took possession of the property.

April 27, 1955: In order to prevent the foreclosure sale by Zenith under the defaulted first trust deed, which sale was scheduled for May 3, 1955, Country Club Villa arranged to refinance the property and paid Zenith the amount then due on said first trust deed note, being in excess of $325,000.

The complaint alleged and the court found that at the time of the making of the compromise agreement on May 11, 1954, the Hassens misrepresented to the plaintiffs the then balance due on the first trust deed promissory note held by Zenith and that following the making of said compromise agreement the Hassens made a series of misrepresentations as to payments to Zenith of principal, interest and reserve for taxes for the months of June to October, 1954; that the Hassens delivered to the plaintiffs forged documents purporting to be receipts by Zenith of the monthly payments of principal, interest and reserve for taxes; that on or about September 8, 1954, the Hassens misrepresented to the plaintiffs that the then unpaid principal of the first trust deed note was $290,000 and that there were no defaults or arrearages thereon, when in truth and in fact the balance due was $311,763.72 and there were arrearages of interest in excess of $3,000. The complaint further alleged and the court found that all of these misrepresentations were made by the Hassens with intent that the plaintiffs should rely thereon, and that they did rely thereon and were thereby caused to believe that there were no defaults under the first trust deed note which caused the plaintiffs to defer action as junior lien holders having a right thereunder to foreclose their junior liens in the event of defaults on the first trust deed note. It was further alleged and found that in order to prevent a foreclosure by Zenith, whose relationship to the Hassens has been above set forth, based upon a default in the payment of principal, interest and taxes, which the Hassens falsely represented as currently paid, the plaintiffs were obliged, in order to protect their junior liens, to refinance the property, and that in so doing Country Club Villa was damaged in the amount of $35,088.45 for expenses of refinancing and increased interest on the new loan. It was further alleged and found that the defendants Erwin E. Hassen and

Betty Stein acted with malice and with the intention of defrauding the plaintiffs of their interest as junior lien holder and that plaintiffs were entitled to punitive damages.

·Without any specificity whatsoever, the defendants make a blunderbuss contention that "The findings are not supported by the evidence." The findings are 50 in number, covering 16 pages of the clerk's transcript. Included in this shotgun contention are such findings that the Millers are husband and wife; that the Hassens are husband and wife; that Country Club Villa is a duly incorporated corporation; that the five trust deeds referred to were duly executed, delivered and recorded; that the stipulation of May 11, 1954, was made by the parties in the former litigation; and that the receipts purporting to show payments to Zenith on the first trust deed were delivered to plaintiffs.

The attack on the foregoing findings at least is precluded by the joint pretrial conference statement signed by counsel for Hassens which stipulates to each and all of said facts. (*Russ-Field Corp.* v. *Underwriters at Lloyd's,* 164 Cal.App.2d 83, 94 [330 P.2d 432].) With respect to the false receipts, defendants' brief states that these receipts were "admittedly spurious." Whether appellants' blanket attack on the findings is directed to the favorable findings that defendants Zenith and William Hassen did not conspire with the other defendants to defraud the plaintiff, we are not advised, although those findings are within the orbit of appellants' contention.

Our consideration of appellants' blanket contention of insufficiency of the evidence to support the findings must be predicated upon the following established principles which are blissfully ignored by appellants in this appeal:

1. "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." (*Grainger* v. *Antoyan,* 48 Cal.2d 805, 807 [313 P.2d 848].)

2. "When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." (*Grainger* v. *Antoyan, supra,* p. 807.)

3. The contention that findings lack evidentiary support "requires defendants to demonstrate that there is no substantial evidence to support the challenged findings." (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550].)

4. "It is incumbent upon appellants to state fully, with transcript references, the evidence which is claimed to be insufficient to support the findings. The reviewing court is not called upon to make an independent search of the record where this rule is ignored." (*Grand* v. *Griesinger*, 160 Cal. App.2d 397, 403 [325 P.2d 475].)

5. "A claim of insufficiency of the evidence to justify findings, consisting of mere assertion without a fair statement of the evidence, is entitled to no consideration when it is apparent, . . . that a substantial amount of evidence was received on behalf of the respondents." (*Estate of Palmer*, 145 Cal.App.2d 428, 431 [302 P.2d 629].)

6. "Where the appellant fails to point out in his brief . . . what particular finding or findings were unsupported by evidence, and the particulars in which they were unsupported, it is not the duty of the appellate court to investigate these questions." (*Devers* v. *Greenwood*, 139 Cal.App.2d 345, 351 [293 P.2d 834].) See also *Kyle* v. *Craig*, 125 Cal. 107, 116 [57 P. 791] ; *Richard* v. *Richard*, 123 Cal.App.2d 900, 902 [267 P.2d 867].

Appellants' brief contains a statement of facts which consists primarily of a résumé of defendants' favorable evidence and plaintiffs' unfavorable evidence. In support of their contention as to the insufficiency of the evidence, appellants hardly allude to the evidence. Their brief on this point is studded with rhetorical questions and in general content consists of an argument to a trial court and not to a reviewing court. Typical is the following quotation therefrom: "Appellants urge and contend, that the trial court after nine days and a thousand pages of transcript, unfortunately did not correctly summarize and appraise the facts as herein delineated."

"Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove that the court was right. And it is an attempt to place upon the court the burden of discovering without assistance from appellant any weakness in the arguments of the respondents. An appellant is not permitted to evade or shift his responsibility in this manner." (*Estate of Palmer, supra,* p. 431.)

Notwithstanding appellants failure to assume their requisite responsibility in support of this contention, respondents have come to our aid and by page and line reference to the transcript have pointed out evidence which is clearly sufficient, if believed by the trial court, to support all of the findings not

otherwise based on stipulated facts, relating to the misrepresentations made by the defendants and the plaintiffs' reliance thereon. ■■■ If we can glean anything out of appellants' brief on this point, it appears to be that the finding that Country Club Villa relied upon defendants' misrepresentations and was injured thereby lacks evidentiary support for the reason that Country Club Villa had no right to rely upon misrepresentations made by the defendants to the Millers as individuals, who, in turn, were the officers, directors and major stockholders of Country Club Villa. Appellants hypothesize that because the spurious receipts were given and the false representations made to the Millers upon an alleged demand that the Hassens comply with the compromise agreement, to which Country Club Villa was also a party, that Country Club Villa was not entitled to rely thereon. Considering that when the compromise agreement was entered into the Hassens were the owners of the hotel; having in mind their relationship to Zenith, the holder of the first trust deed executed by Country Club Villa and guaranteed by the Millers, obligating them to pay any defaults of the Hassens thereunder; considering that any failure of the Hassens to pay the principal, interest and taxes under the first trust deed constituted a default on the second trust deed held by the Millers and the third trust deed held by Country Club Villa, thus jeopardizing their security and remembering that the Hassens at all times knew that the Millers were officers, directors and shareholders of Country Club Villa; the inference drawn by the court that the Hassens intended Country Club Villa to rely on the representations as well as the Millers, as individuals, is clearly within reason, and under the circumstances here shown a contrary inference would be illogical and unwarranted. The Hassens' obligation under the compromise agreement was to monthly provide the Millers with "evidence of payment of the amounts" coming due under the first trust deed. The Hassens' fraudulent production of forged and spurious receipts was not even a performance of their contractual obligations, conceding that only the Millers, as individuals, were contractually entitled to genuine evidence of payments.

We are satisfied that the findings have more than adequate evidentiary support.

■■ Defendants' next major contention, which we find entirely without merit, is that plaintiffs' entire action was predicated upon a conspiracy between Zenith and the Hassens, and that the court having found that Zenith did not conspire with

the appealing defendants to defraud the plaintiffs, the whole action fails. We marvel that counsel had the temerity to make such an assertion which could only dare be made on the assumption that this court would not read the pleadings. Without encumbering this opinion with a recitation of the allegations of the complaint, it is clear that the gravamen of plaintiffs' complaint was for fraud and deceit against the appealing defendants. It charged each of them with specific acts of fraud and misrepresentations, and pleaded the requisite elements of intent to deceive, justifiable reliance thereon and damages. After stating a complete cause of action in fraud against the appealing defendants, it was then alleged that Zenith, William Hassen and E. E. Hassen Foundation conspired with the Hassens to defraud the plaintiffs, and it was this allegation only which the court found was not true as to said defendants but found was true as to appellant Betty Stein.

Defendants' next contention is that the Millers had no right to rely on any representations made by the Hassens because the Millers knew that the Hassens were unreliable. The trial court found that the Millers were justified in relying upon and did rely upon the representations made by the Hassens and were deceived thereby. The principal reliance by the Millers constituting the fraud in this action was not upon any oral statement by the Hassens, but upon the receipts known by the Hassens to be forged and spurious, but ostensibly executed by Zenith, with which corporation defendants vehemently disclaim any connection. Whatever may have been the Millers' opinion of the trustworthiness of the Hassens, it has not been demonstrated to us that the Millers were not entitled to rely upon this documentary evidence purportedly executed by Zenith, the forgery of one of which receipts was the subject of a criminal conviction as disclosed in *People* v. *Hassen*, 144 Cal.App.2d 334 [301 P.2d 80].

Mr. Miller testified that the first time he was told that the principal payments on the first trust deed had not been paid since January, 1954, was the early part of November, 1954. He was then asked who told him. During an argument on an objection to the question as hearsay, the court said: "The witness' testimony is that he first heard that the payments had not been made in early 1954." Immediately, thereafter, in ruling on the objection the court struck part of the answer and said: "But the rest of it will stand; that he first heard of it in November, 1954." Out of this fragment of the

record, defendants contend: "The trial court after stating that Miller knew of the defaults early in 1954, erred in not finding that Miller of Country Club Villa, Inc., could and should have minimized its damages by either foreclosing early in 1954 or refinancing. . . ."

In the first place, appellants completely misconstrued the court's statement; secondly, to construe this statement as appellants contend would be in direct conflict with the very testimony to which the court was referring, and, finally, the misrepresentations, which are the gravamen of this action, consist of the Hassens' deceitful simulation of performance of their obligations under the compromise agreement which was not executed until May 11, 1954. In any event, the court found untrue the allegations of defendants' affirmative defense that plaintiff knew at all times that defendants' representations were false. Hence, there is no basis upon which defendants can urge that plaintiffs were under any duty to minimize their damages.

Defendants' final contention is that the court erred in sustaining an objection to a question to Mr. Miller on cross-examination as to how soon he sold the hotel after foreclosure. As part of the compensatory damages, the court awarded plaintiffs the differential between the interest rate of the alleged first trust deed and the refinancing of the first trust deed. Defendants argue that if plaintiffs resold the hotel after foreclosure and refinancing, they would no longer be obligated to pay the increased interest and, therefore, not entitled to recover it. The answer is obvious. In case of a sale, plaintiffs' damages by reason of a higher interest rate would have been reflected in a lower purchase price. Plaintiffs' damage in this regard was occasioned upon obtaining a new loan at the higher rate of interest and the fact or date of resale was immaterial. We find no merit in the appeal.

Judgment affirmed.

Fox, P. J., and Ashburn, J., concurred.