[No. B201195. Second Dist., Div. Four. July 30, 2008.]

NORBERT GEHR, Plaintiff and Appellant, v.
BAKER HUGHES OIL FIELD OPERATIONS, INC., et al., Defendants and
Respondents.

COUNSEL

Ezer & Williamson and Mitchell J. Ezer for Plaintiff and Appellant.

Keesal, Young & Logan, William H. Collier, Jr., Marc R. Greenberg and
Frances L. Keeler for Defendants and Respondents.

OPINION

SUZUKAWA, J.—After granting defendants' summary judgment motion and
denying plaintiff's summary adjudication motion, the trial court entered
judgment for defendants. We affirm the judgment.

## BACKGROUND

This action involves a 13-acre commercial property (the property or the
site) in the City of Commerce. Allegedly, defendants, the former owners,
polluted the property with chemical solvents before they sold it to plaintiff in
1985.[1] In 2006, plaintiff sued defendants for damages under a continuing
nuisance theory. Specifically, plaintiffs sought to recover interest rate differ-
ential damages, contending that because of the contamination, a prospective
lender had refused to refinance plaintiff's note secured by a first trust deed to
the property.

---

[1] We granted plaintiff's request to take judicial notice of a postjudgment October 12, 2007
order by the California Regional Water Quality Control Board (RWQCB). The RWQCB found
that defendants were responsible for the site's contamination and directed defendants to begin
the remediation process.

■ Under California law, damages for diminution in value may only be recovered for permanent, not continuing, nuisances. (*Santa Fe Partnership v. ARCO Products Co.* (1996) 46 Cal.App.4th 967, 977–978 [54 Cal.Rptr.2d 214] (*Santa Fe Partnership*).) In this case, it is undisputed that because the limitations period for bringing a permanent nuisance claim has expired, damages for diminution in value are unavailable. Plaintiff contends, however, that he is not seeking damages for diminution in value, but for the loss of use of his property as collateral. He contends that because damages for loss of use are available under a continuing nuisance theory, the trial court erred in granting summary judgment for defendants.

## I.  Pleading Allegations

The following allegations are taken from the second amended complaint. In 1985, plaintiff Norbert Gehr purchased the property from a division of defendant Baker Hughes Oil Field Operations, Inc. Plaintiff encumbered the property with a note secured by a first trust deed in favor of California Federal Bank/Citibank (the first trust deed). In 2002, plaintiff applied with Union Bank of California to refinance the first trust deed at a lower interest rate. As a condition of refinancing the first trust deed, Union Bank required an environmental assessment of the property. The resulting assessment revealed that the property was contaminated with chemical solvents, including tetrachloromethane (PCE) and trichloromethane (TCE), which defendants had used on the site before they sold it to plaintiff.

After discovering the contamination, plaintiff requested that defendants either " 'remediate the contamination to the degree and extent necessary to . . . satisfy Plaintiff's lender,' [or] issue an indemnity in favor of Union Bank . . . so that the refinancing could proceed." After defendants refused to comply, Union Bank declined to refinance the first trust deed.

On August 11, 2006, plaintiff sued defendants for interest rate differential damages of $681,228.14,[2] plus prejudgment interest. According to the second amended complaint, the contamination constituted "a continuing nuisance within the meaning of Section 3479 of the *Civil Code*, in that it is an obstruction to Plaintiff's free use of the Property, so as to interfere with the comfortable enjoyment of the Property, and said nuisance is continuing because the contamination is abatable through feasible environmental remediation."

---

[2] Plaintiff calculated the difference between $1,408,229.12, the interest paid on the Citibank loan during the 53-month period before the complaint was filed, and $727,000.98, the interest that would have been paid at the lower rate offered by Union Bank.

II. *Summary Adjudication and Summary Judgment Motions*

Plaintiff moved for summary adjudication of the issue of damages.[3] Plaintiff argued that interest rate differential damages may be recovered under a continuing nuisance theory based on the following legal principles: (1) a former owner's contamination of property can constitute a continuing nuisance (*Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1134 [281 Cal.Rptr. 827]); (2) a private nuisance is a tort (*KFC Western, Inc. v. Meghrig* (1994) 23 Cal.App.4th 1167, 1181 [28 Cal.Rptr.2d 676]); (3) the proper measure of damages for tort claims "is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not" (Civ. Code, § 3333); and (4) special damages may be recovered in tort actions as well as in contract actions (*Miller v. Hassen* (1960) 182 Cal.App.2d 370, 380 [6 Cal.Rptr. 202] [interest rate differential damages may be awarded for fraud]).

Defendants opposed the summary adjudication motion on the ground that California law does not allow the recovery of interest rate differential damages for a continuing private nuisance. Defendants also argued that plaintiff had failed to state a claim for breach of contract.

Defendants moved for summary judgment on the ground that under the parties' 1985 purchase agreement, which contained no indemnity clause, they had no duty to indemnify Union Bank. Defendants pointed out that the 1985 purchase agreement (1) contained no representations or warranties regarding the condition of the soil; (2) stated that the property was being sold in its existing physical condition; (3) imposed upon plaintiff the obligation to conduct an independent investigation of the property, including the soil; and (4) contained an addendum that made the close of escrow contingent upon plaintiff's "inspection and subsequent approval of the physical condition of the Property, including, but not limited to plumbing, HVAC, roof, floors, *soils*, foundations, etc." (Italics added.)

Defendants asserted that under existing California law, damages for a continuing nuisance are limited to either the abatement of the nuisance or

---

[3] The summary judgment statute provides in relevant part: "A party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, *one or more claims for damages*, or one or more issues of duty, if that party contends that the cause of action has no merit or that there is no affirmative defense thereto, or that there is no merit to an affirmative defense as to any cause of action, or both, or that there is no merit to a claim for damages, as specified in Section 3294 of the Civil Code, or that one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs. A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1), italics added.)

general compensatory damages. Defendants noted that although there was one decision, *Carson Harbor Village, Ltd. v. Unocal Corp.* (C.D.Cal. 2003) 287 F.Supp.2d 1118, which discussed the availability of interest rate differential damages under a continuing nuisance theory, that case was distinguishable because it involved a contractual indemnity claim.[4]

In opposition to the summary judgment motion, plaintiff denied that he was seeking to recover "on any form of indemnification theory, contractual, implied or otherwise."

### III. *Summary Judgment Ruling and Judgment*

Upon considering the cross-motions for summary judgment and summary adjudication, the trial court treated plaintiff's claim for interest rate differential damages as akin to diminution in value, which may only be recovered for permanent nuisances. As previously stated, it is undisputed that the statute of limitations has expired on any permanent nuisance claim.[5]

The trial court stated in its written order: "While 'nuisance' is broadly defined in the Civil Code, a distinction is made as to available damages in actions for 'permanent' versus 'continuing' nuisances. When suing for a continuing nuisance, future or prospective damages are not allowed, such as damages for diminution in the value of the subject property; a nuisance can only be considered 'continuing' if it can be abated, and therefore a plaintiff suing under this theory may only recover the costs of abating the nuisance. (*Santa Fe Partnership*[, *supra*,] 46 Cal.App.4th 967, 977–978 [54 Cal.Rptr.2d 214]; see also *Camsi IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542 [282 Cal.Rptr. 80], disallowing leave to amend to assert a continuing nuisance, as the damages request for diminution in value was inconsistent with this theory.) Plaintiff brings this action based on a continuing nuisance theory. [Citation.] This is the only available nuisance theory upon which plaintiff could potentially recover."

The trial court further stated that plaintiff's request for " 'excessive interest special damages' " was akin to a request for damages for the decline in property value, which are not available under "a continuing nuisance theory,

---

[4] The indemnity clause in *Carson Harbor* stated: "the Partnership Defendants agreed to indemnify and hold Carson Harbor harmless 'from and against any . . . damage, cost, expense . . . liability . . . suffered by [Carson Harbor] resulting, directly or indirectly, from . . . any liability or obligation of [the Partnership Defendants] which [Carson Harbor] is not specifically required to assume hereunder.' " (*Carson Harbor Village, Ltd. v. Unocal Corp.* (9th Cir. 2001) 270 F.3d 863, 888.)

[5] The trial court concluded that the three-year limitations period for a permanent nuisance (Code Civ. Proc., § 338, subd. (b)) had expired because the contamination must have occurred in 1985 or earlier. Plaintiff does not challenge this determination on appeal.

and plaintiff may not amend to assert a permanent nuisance theory because of a statute of limitations bar. Therefore, defendant[s'] motion for summary judgment is granted. [¶] Because plaintiff is unable to assert a valid claim for excessive interest special damages in this suit, his cross-motion for summary adjudication asserting the right to recover such damages must be denied."

Based on the summary judgment and summary adjudication ruling, the trial court entered judgment for defendants. This appeal followed.

## DISCUSSION

### I. Standard of Review

The standard of review for summary judgment is well established. The motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We independently review an order granting summary judgment. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) In performing our independent review of the evidence, "we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue. [Citation.]" (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438 [111 Cal.Rptr.2d 534].)[6]

### II. Permanent and Continuing Private Nuisances

■ The available remedies and limitations periods for private nuisance claims differ according to whether the nuisance is classified as continuing or permanent. (*Santa Fe Partnership, supra,* 46 Cal.App.4th at p. 975.) If the nuisance has inflicted a permanent injury on the land, the plaintiff generally must bring a single lawsuit for all past, present, and future damages within three years of the creation of the nuisance. (*Ibid.; Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 868–869 [218 Cal.Rptr. 293, 705 P.2d 866].) But if the nuisance is one

---

[6] Defendants object that the notice of appeal, which mentioned only the judgment, was insufficient to include the order denying plaintiff's summary adjudication motion. The judgment, however, incorporated by reference the orders granting defendants' summary judgment motion and denying plaintiff's motion. Given that an order denying a summary adjudication motion is appealable as an order after an appealable judgment (Code Civ. Proc., § 904.1, subd. (a)(2)), we conclude that defendants' contention lacks merit.

" 'which may be discontinued at any time, it is considered continuing in character and persons harmed by it may bring successive actions for damages until the nuisance is abated. [Citation.] Recovery is limited, however, to actual injury suffered prior to commencement of each action. Prospective damages are unavailable.' (*Baker v. Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d 862, 868–869 . . . .)" (*Santa Fe Partnership, supra,* 46 Cal.App.4th at p. 976, italics omitted.)[7] This means that if a private nuisance is deemed to be a continuing nuisance, the plaintiff may bring successive actions for damages (except for diminution in value) incurred prior to the commencement of each successive action until the nuisance is finally abated.

■ " 'The classic example of a continuing nuisance is an ongoing . . . disturbance, . . . caused by noise, vibration or foul odor. (E.g., *Vowinckel* v. *N. Clark & Sons* (1932) 216 Cal. 156, 158 [13 P.2d 733] [vibration, noise and noxious soot, smoke and gases emanating from pottery factory].) Indeed, even more substantial physical invasions of land have been held to be continuing in character. (E.g., *Tracy* v. *Ferrera* (1956) 144 Cal.App.2d 827, 828 [301 P.2d 905] [deflection of rain water and emission of noxious odors and fumes from neighbor's pipes and furnace].) As emphasized in *Tracy,* the distinction to be drawn is between encroachments of a permanent nature erected upon one's lands, and a complaint made, not of the location of the offending structures, but of the continuing use of such structures. (*Id., supra,* 144 Cal.App.2d at p. 828.) The former are permanent, the latter is not.' (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d at pp. 869–870, fns. omitted.)" (*Mangini v. Aerojet-General Corp., supra,* 230 Cal.App.3d at p. 1146.)

It is sometimes difficult to classify a nuisance as either continuing or permanent, particularly if it is uncertain whether the nuisance can actually be abated. (*Spaulding v. Cameron* (1952) 38 Cal.2d 265, 269 [239 P.2d 625] (*Spaulding*).) As the Supreme Court stated in *Spaulding*: "In early decisions of this court it was held that it should not be presumed that a nuisance would continue, and damages were not allowed for a decrease in market value caused by the existence of the nuisance but were limited to the actual physical injury suffered before the commencement of the action. [Citations.] The remedy for a continuing nuisance was either a suit for injunctive relief or successive actions for damages as new injuries occurred. Situations arose, however, where injunctive relief was not appropriate or where successive

---

[7] Because a continuing nuisance can be abated at any time, granting damages for both diminution in value and the cost of remediation would unjustly enrich the plaintiff. (*Santa Fe Partnership, supra,* 46 Cal.App.4th at p. 977.) Once the nuisance is eliminated, the cause of the diminution in value will also be eliminated, thereby making an award of damages for future harm unnecessary and unjust. (*Ibid.*)

actions were undesirable either to the plaintiff or the defendant or both. Accordingly, it was recognized that some types of nuisances should be considered permanent, and in such cases recovery of past and anticipated future damages were allowed in one action. (*Eachus* v. *Los Angeles Consol. Elec. Ry. Co.*, 103 Cal. 614, 622 [37 P. 750]; *Williams* v. *Southern Pac. Co.*, 150 Cal. 624, 626–628 [89 P. 599]; *Rankin* v. *DeBare*, 205 Cal. 639, 641 [271 P. 1050] . . . .)" (38 Cal.2d at p. 267.)

■ If the trial court orders a defendant to abate a nuisance, it implies that "the nuisance was abatable and therefore of a continuing nature." (*Santa Fe Partnership, supra*, 46 Cal.App.4th at p. 975.) One reason a plaintiff in a continuing nuisance case may not recover diminution in value damages is that the "[p]laintiff would obtain a double recovery if she could recover for the depreciation in value and also have the cause of that depreciation removed." (*Spaulding, supra*, 38 Cal.2d at p. 269.) Another reason is that "if the defendant is willing and able to abate the nuisance, it is unfair to award damages on the theory that it will continue. [Citations.]" (*Id.* at p. 268.)

■ "If the defendant is not privileged to continue the nuisance and is able to abate it, he cannot complain if the plaintiff elects to bring successive actions as damages accrue until abatement takes place. [Citations.] On the other hand, if it appears improbable as a practical matter that the nuisance can or will be abated, the plaintiff should not be left to the troublesome remedy of successive actions. [Citations.]" (*Spaulding, supra*, 38 Cal.2d at pp. 268–269.)

III. *Plaintiff's Nonphysical Damages Claim*

In this case, we must decide whether plaintiff's claim for interest rate differential damages is actually a claim for diminution in value, which may not be recovered under a continuing nuisance theory. (*Spaulding, supra*, 38 Cal.2d at pp. 269–270.) Plaintiff urges us to treat his claim as one for the loss of use of property, not for diminution in value.

However, the inability to encumber property is not a physical injury to the property. Indeed, plaintiff has not alleged any actual physical loss of use of his property. Accordingly, he is not seeking the type of damages generally associated with a continuing nuisance.

Although plaintiff argues that a physical loss of use is not required in order to prevail under a continuing nuisance theory, the cases that he cites are readily distinguishable. None involved a claim for interest rate differential damages or discussed whether to allow such damages under a continuing nuisance theory. Accordingly, they do not compel a reversal in this case.

(Citing, e.g., *Mangini v. Aerojet-General Corp.* (1996) 12 Cal.4th 1087 [51 Cal.Rptr.2d 272, 912 P.2d 1220] [judgment for defendant affirmed because, given plaintiff's failure to prove the existence of continuing nuisance, the claim was time-barred]; *Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967 [132 Cal.Rptr.2d 635] [triable issues existed as to whether the plaintiff's delay in developing the property because of possible post-remediation contamination was a compensable loss of use under a continuing nuisance theory]; *McIvor v. Mercer-Fraser Co.* (1946) 76 Cal.App.2d 247 [172 P.2d 758] [affirmed damages awarded for the plaintiff's loss of use and enjoyment of his property resulting from a mining operation conducted on the neighboring property]; *Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903 [162 Cal.Rptr. 194] [reversed and remanded for further proceedings on tenant's claim that landlord had created a dangerous and unsafe condition on the premises]; *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160 [52 Cal.Rptr.2d 518] [judgment for plaintiff reversed]; *Cutujian v. Benedict Hills Estates Assn.* (1996) 41 Cal.App.4th 1379 [49 Cal.Rptr.2d 166] [reversed and remanded for further proceedings on plaintiff's claim for breach of an affirmative covenant running with the land and an essentially identical nuisance claim arising from the same violation of duty]; *Spaulding, supra,* 38 Cal.2d 265 [affirmed in part, reversed in part, and remanded for further proceedings on whether the physical damage to plaintiff's property was permanent or continuing].)

The case most helpful to our analysis, *Santa Fe Partnership, supra,* 46 Cal.App.4th 967, was decided by Division Seven of this appellate district. In *Santa Fe Partnership,* the plaintiffs acquired the property next to the defendant ARCO's property, which was being remediated for contamination. Four years later, the plaintiffs sued ARCO for private nuisance and other torts, claiming that the remediation might take many more years and that it was "difficult, if not impossible, to sell or secure a loan against the land due to the stigma which attaches to previously contaminated property. They argue[d] this prevents a land speculator or investor from realizing his or her profit, and, because investment moneys are locked up in the contaminated property, prevents such persons from using that investment money for other projects. [They] therefore request[ed that the court] 'overrule' existing law and allow 'stigma' damages as a proper remedy for a continuing nuisance caused by chemical pollution of the land." (*Id.* at pp. 977–978.)

As in this case, the plaintiffs in *Santa Fe Partnership* did not seek to abate the nuisance or claim any physical loss of use of their property. The only damages they claimed were for "postcleanup stigma damages" (*Santa Fe Partnership, supra,* 46 Cal.App.4th at p. 972), as "a component of the diminution in value of the land caused by the contamination, whether or not complete remediation is feasible in the immediate future." (*Id.* at p. 978.)

In rejecting the plaintiffs' claim, Division Seven relied upon *F.D.I.C. v. Jackson-Shaw Partners No. 46, Ltd.* (N.D.Cal. 1994) 850 F.Supp. 839, which it quoted in *Santa Fe Partnership* as follows: " '[T]he weight of California courts which have spoken to this issue have rejected attempts to recover such damages under continuing trespass or continuing nuisance theories. It is easy to see why. The principal assumption underlying continuing trespass and continuing nuisance theories is that the activity causing the injury can be abated. Thus, the damages are distinct from those arising from conduct constituting permanent trespass and permanent nuisance. To accept [the plaintiffs'] reasoning would permit parties seeking recovery for time-barred permanent trespass and permanent nuisance claims to avoid the statute of limitations simply by recharacterizing them as continuing trespass and continuing nuisance claims. The Court cannot permit the statute of limitations to be eviscerated in this fashion.' " (*Santa Fe Partnership, supra*, 46 Cal.App.4th at p. 980, quoting from *F.D.I.C. v. Jackson-Shaw Partners, supra*, 850 F.Supp. at p. 844.)

Although the appellate court in *Santa Fe Partnership* "acknowledge[d] the logic and general appeal of [the plaintiff's] argument in the context of contamination from extensive toxic or hazardous waste," it stated that it was "bound to follow and apply the decisions of our highest court, which expressly disallow prospective damages in cases of continuing nuisance. (*Spaulding* v. *Cameron, supra*, 38 Cal.2d 265; *Auto Equity Sales, Inc.* v. *Superior Court* [(1962)] 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Accordingly, we reject appellants' request to create new law to permit recovery of diminution in value damages in a continuing nuisance case." (*Santa Fe Partnership, supra*, 46 Cal.App.4th at p. 978, fn. omitted.)

In this case, because the statute of limitations has expired on the permanent nuisance claim, plaintiff's only hope of recovery is to distinguish interest rate differential damages from diminution in value damages. The undisputed facts lead us to conclude, however, that plaintiff's claim, like the "stigma" damages claim in *Santa Fe Partnership*, is a component of diminution in value. Just as the plaintiffs in *Santa Fe Partnership* sought to recover damages for their inability to "secure a loan against the land," which prevented them from realizing the full profit of their investment (*Santa Fe Partnership, supra*, 46 Cal.App.4th at p. 977), plaintiff seeks to recover interest rate differential damages based on his inability to refinance the first trust deed.

■ We can discern no meaningful difference between the damages resulting from the inability to refinance the first trust deed in this case, and the "stigma" damages resulting from the inability to sell or secure a loan against the land in *Santa Fe Partnership*. In both cases, the damages are "a component of the diminution in value of the land caused by the contamination, whether or not complete remediation is feasible in the immediate

future." (*Santa Fe Partnership, supra*, 46 Cal.App.4th at p. 978.) We therefore conclude that plaintiff's interest rate differential claim is indistinguishable from a diminution in value claim, which is barred, as a matter of law, by the statute of limitations.

## DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal.

Epstein, P. J., and Willhite, J., concurred.

A peitition for a rehearing was denied August 21, 2008, and appellant's petition for review by the Supreme Court was denied October 16, 2008, S166628.