[No. B157698. Second Dist., Div. Two. Apr. 10, 2003.]

PARVIZ DAVID SHAMSIAN et al., Plaintiffs and Appellants, v.
ATLANTIC RICHFIELD COMPANY et al., Defendants and Respondents.

968

COUNSEL

Law Office of Susan K. Pintar and Susan K. Pintar for Plaintiffs and Appellants.

Manatt, Phelps & Phillips, Mark D. Johnson, Hal D. Goldflam and Henry C. Wang for Defendants and Respondents.

OPINION

**ASHMANN-GERST, J.**—This appeal arises out of soil and groundwater contamination caused by gasoline leakage from an underground storage tank at a service station formerly operated by respondent Morris Shachory (Shachory), a sublessee of respondent Atlantic Richfield Company (ARCO). The appellants Parviz David Shamsian (Shamsian) and Roya Goltche (Goltche), the current possessors of the property, seek to hold Shachory and ARCO (collectively respondents) liable for statutory penalties, damages, future remediation, and injunctive relief. The trial court granted summary judgment for the respondents, which the appellants now challenge.

We hold that the appellants' cause of action for civil penalties brought under Health and Safety Code section 25249.7, the civil enforcement provision in the Safe Drinking Water and Toxic Enforcement Act of 1986 (the Act),[1] is barred by the one-year limitation in Code of Civil Procedure section 340, subdivision (a).[2] Further, we conclude that there are triable issues as to whether the appellants' nuisance and trespass causes of action are barred by the three-year limitation set forth in section 338, subdivision (b), and as to whether the appellants are entitled to a declaration of rights regarding future remediation, but that there are no triable issues as to whether the respondents are liable for negligent misrepresentation. Finally, even though the appellants may not state a cause of action for injunctive relief, we instruct the trial court on remand to permit the appellants to incorporate their request for injunctive relief into their nuisance cause of action. We reverse and remand.

FACTUAL AND PROCEDURAL HISTORY

1. *Background.*

From November 8, 1967, to September 30, 1990, Shachory subleased property in Los Angeles (the property) from ARCO for the purpose of

---

[1]The Act was enacted in 1986 after the electorate passed Proposition 65.

[2]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

operating a service station. In the late 1980's, site investigations revealed the presence of hydrocarbons in the subsurface soil and groundwater, prompting ARCO to initiate a remediation program. In 1996, Geraghty & Miller, Inc., an environmental services company working on behalf of ARCO, prepared a site closure request for the Los Angeles Regional Water Quality Control Board (RWQCB) summarizing the remediation efforts, the removal of contaminants, and the results of various tests. In response to and based on the site closure request, the RWQCB issued a "no further action" letter indicating that ARCO had completed the site investigation and remedial action.

■ ■ ■ ■ In 1997, Shamsian negotiated a ground lease of the property on behalf of his wife, Goltche, which she signed on December 11, 1997.[3] Before Goltche signed, however, Shamsian briefly reviewed the site closure request prepared by Geraghty & Miller, Inc., for the RWQCB. When the appellants' contractor began installing new underground storage tanks, he discovered a strong odor and discolored soil. Subsequently, the appellants hired Environmental Managers & Auditors, Inc., to determine whether the subsurface soil and groundwater had been impacted with hydrocarbons. In May 1998, Environmental Managers & Auditors, Inc., reported that the property was contaminated above regulatory limits, and in greater levels than detected by Geraghty & Miller, Inc.

2. *The complaint.*

On May 19, 2000, the appellants filed suit, inter alia, against ARCO and Shachory. Against ARCO, the appellants alleged a cause of action for civil penalties, alleging that ARCO violated Health and Safety Code section 25249.5 by knowingly discharging chemicals in such a manner likely to contaminate a source of drinking water. Additionally, the appellants sued

[3]The lease attached as exhibit A to the complaint provides that Goltche alone was the tenant under the lease. This may raise a standing issue as to all or some of the causes of action asserted by Shamsian, who is Goltche's husband. However, the respondents did not raise this issue below, and they give it only passing mention in a footnote in the summary of material facts in their appellate brief. While standing may be raised for the first time on appeal (*McKeon v. Hastings College* (1986) 185 Cal.App.3d 877, 890 [230 Cal.Rptr. 176]), we deem the issue waived for purposes of this opinion. Although we review summary judgments de novo, our review is limited to issues which have been adequately raised and briefed. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457].) We note that the respondents' separate statements do not address the business relationship between Goltche and Shamsian, nor do they address whether the lease is community property or Goltche's separate property. The respondents' footnote does not provide any argument as to how the leasehold should be characterized, nor does it explain why Shamsian lacks standing to sue on each of the causes of action alleged, particularly if he in fact has a community property interest. That said, the respondents are not foreclosed from raising Shamsian's standing on remand.

ARCO and Shachory for private nuisance, trespass, negligent misrepresentation, declaratory relief,[4] and injunctive relief. The negligent misrepresentation claim was based on Shamsian's alleged reliance on the site closure request in making the decision for the appellants to enter into the ground lease for the property.

### 3. *ARCO and Shachory's motions for summary judgment or adjudication.*

In its motion, ARCO argued that the appellants' cause of action for civil penalties is barred by the one-year limitation in section 340, subdivision (a). The respondents, in both their motions, argued that the nuisance and trespass causes of action are barred by the three-year limitation in section 338, subdivision (b) because this action was filed more than three years after Shachory vacated the property in 1990 and ARCO vacated the property in 1996, and because the nuisance is permanent rather than continuing. Both respondents urged the trial court to conclude that the nuisance is permanent based on the determination by RWQCB that ARCO completed the necessary corrective action in 1996. Further, they argued that even if the nuisance was a continuing one, the claim would have to fail because the appellants have not suffered allowable damages. Regarding the negligent misrepresentation claim, both respondents argued that the site closure request made no misrepresentations. Finally, both respondents argued that the appellants' declaratory relief and injunctive relief claims fail if all the other claims fail.

### 4. *The trial court's ruling, the judgment, and this appeal.*

After oral argument, the trial court ruled as follows: The cause of action for civil penalties is barred by section 340, subdivision (a). The nuisance and trespass causes of action are barred by section 338, subdivision (b) because the appellants' "interrogatory responses indicate that the chemical releases [occurred] while [ARCO's] franchisee operated the premises, i.e., before 1991. Further, the RWQCB determined on 10/25/96 that [ARCO] had abated the contamination in compliance with regulatory standards. That determination has not been reopened or set aside." There is no triable issue as to whether either ARCO or Shachory misrepresented any facts to the appellants. Because the appellants have not suffered any loss through the payment of an adverse judgment or settlement, the declaratory relief cause of action and request for equitable indemnity lack merit. Finally, the absence of a viable substantive claim forecloses the request for injunctive relief.

Thereafter, the trial court entered judgment for ARCO and Shachory. This timely appeal followed.

---

[4]As we discuss in part V, *post,* the declaratory relief cause of action is designated as one for both declaratory relief and equitable indemnity, but we view it as solely one for declaratory relief.

### 5. *The RWQCB's October 25, 2002 case reopen letter.*

After this appeal was filed, the RWQCB sent a case reopen letter to ARCO, stating in part: "This letter is written with regard to the need for a renewed investigation of methyl tertiary butyl ether (MTBE) pollution at the subject site. On October 25, 1996, this Regional Board issued a case closure letter for the site. At the time of closure, no MTBE analytical [data] related to the Underground Storage Tank (UST) release were available for review by the Regional Board staff. Since then, the [R]egional Board has increased awareness of MTBE impact to the groundwater." ██ The letter refers to the report prepared by Environmental Managers & Auditors, Inc., then states that the RWQCB has "determined that the groundwater at the Site has been impacted by MTBE and plume beneath the Site has not been adequately assessed. You are required to submit a workplan for groundwater investigation."[5]

### STANDARD OF REVIEW

██ An appellate court reviews the granting of a summary judgment motion de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) When analyzing the issues we follow the traditional three-step analysis. "We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]" (*Torres v. Reardon* (1992) 3 Cal.App.4th 831, 836 [5 Cal.Rptr.2d 52].) "[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it." (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].) We are obligated to uphold the trial court's decision if it is correct on any ground, regardless of the reasons the trial court gave. (*Biljac Associates v. First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1419 [267 Cal.Rptr. 819].)[6]

---

[5] We granted the appellants' request that we take judicial notice of the RWQCB's case reopen letter. Ordinarily an appellate court will not take judicial notice of matters outside the appellate record, but we have the discretion to do so. (See *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325 [48 Cal.Rptr.2d 87, 906 P.2d 1242].) Because our review is de novo and the case reopen letter is material, we deem this an appropriate case to judicially notice a matter outside the appellate record.

[6] We are cognizant that the amendment to section 437c, subdivision (m)(2), effective January 1, 2003, requires that parties be afforded an opportunity to submit supplemental

## Discussion

I. *The civil penalties cause of action.*[7]

### A. *The Act.*

Health and Safety Code section 25249.5 provides in relevant part that "[n]o person in the course of doing business shall knowingly discharge or release a chemical known to the state to cause cancer or reproductive toxicity into water or onto or into land where such chemical passes or probably will pass into any source of drinking water[.]" Section 25249.7, subdivision (b)(1) establishes that any person who violates Health and Safety Code section 25249.5 shall be liable for a civil penalty not to exceed $2,500 per day for each violation. Pursuant to Health and Safety Code section 25249.7, subdivision (d), a civil action may be brought by any person in the public interest, so long as state and local prosecuting agencies have been notified of the violation and declined to pursue an enforcement action.

### B. *Section 340, subdivision (a) governs a cause of action for civil penalties under the Act.*

 The appellants contend that the three-year limitation set forth in section 338, subdivision (b) applies to an action filed under Health and Safety Code section 25249.7, but the respondents disagree, urging us to conclude that this cause of action is governed by the one-year limitation set forth in section 340, subdivision (a). For reasons we discuss, we agree with the respondents.

The Act does not specify a limitation on actions under Health and Safety Code section 25249.7, and no reported decision has determined which section of the Code of Civil Procedure applies. Therefore, we are presented with an issue of first impression, and our task is to resolve it by interpreting the competing statutes. We must "ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to

---

briefs if an appellate court is considering affirming a summary judgment or adjudication on grounds not relied upon by the trial court. This amendment does not change a reviewing court's role.

[7]Although the appellants' Health and Safety Code cause of action alleges that the appellants have been damaged, that statute only permits them to seek civil penalties or injunctive relief. We note that the prayer for relief in the complaint seeks civil penalties pursuant to Health and Safety Code section 25249.7. Therefore, we construe this cause of action to be one for civil penalties.

every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

 We begin with section 338. Subdivision (a) of that statute provides that within three years a party may bring "[a]n action upon a liability created by statute, other than a penalty or forfeiture." Subdivision (b) of that statute provides that within three years a party may bring "[a]n action for trespass upon or injury to real property." If we construe this statute as providing a three-year limitation on an action for a civil penalty if the action happens to relate to an injury to property, it would create discord between subdivisions (a) and (b). The question is whether we can avoid such discord without doing violence to either subdivision. We answer in the affirmative. Subdivision (b) pertains to an action for "injury" to real property, but the Act only authorizes actions for civil penalties and injunctive relief. While damage a particular person suffers could be a factor for a trial court to consider when imposing a civil penalty,[8] it is not the deciding factor, illustrating that an action for a civil penalty and an action for injury to real property are different in kind even if they are based on the same wrong. Further, the civil penalty provided is penal, not compensatory, which serves to amplify the distinction. As a result, we conclude that subdivision (b) does not apply to a claim for civil penalties, and subdivision (a) operates to exclude causes of action for civil penalties from the scope of section 338.

Next, we turn to section 340, subdivision (a), which provides that within one year a party may bring "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation." This statute fits the appellants' first cause of action because it is based upon a statute for a penalty which has been given to individuals as well as the state. Any other interpretation would violate the plain language of section 340, subdivision (a). Moreover, this interpretation brings section 340, subdivision

---

[8]Health and Safety Code section 25249.7, subdivision (b)(2) provides: "In assessing the amount of a civil penalty for a violation of this chapter, the court shall consider all of the following: [¶] (A) The nature and extent of the violation. [¶] (B) The number of, and severity of, the violations. [¶] (C) The economic effect of the penalty on the violator. [¶] (D) Whether the violator took good faith measures to comply with this chapter and the time these measures were taken. [¶] (E) The willfulness of the violator's misconduct. [¶] (F) The deterrent effect that the imposition of the penalty would have on both the violator and the regulated community as a whole. [¶] (G) Any other factor that justice may require."

(a) into harmony with section 338, subdivision (b). Accordingly, we conclude that a one-year limitation applies.

Finally, we look to prior case law for affirmation. Generally, section 340, subdivision (a) applies if a civil penalty is mandatory. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 133 [41 Cal.Rptr.2d 295].) In addition, "the settled rule in California is that statutes which provide for recovery of damages additional to actual losses incurred, such as double or treble damages, are considered penal in nature [citations], and thus governed by the one-year period of limitations stated in section 340, subdivision [(a)]. [Citations.]" (*G.H.I.I. v. MTS, Inc.* (1983) 147 Cal.App.3d 256, 277 [195 Cal.Rptr. 211, 41 A.L.R.4th 653].) Health and Safety Code section 25249.7, subdivision (b) provides that any person who violates Health and Safety Code section 25249.5 "shall be liable for a civil penalty[.]" Also, it provides a recovery in addition to the damages a plaintiff might otherwise recover, and it is therefore penal. Because the civil penalty is mandatory and penal, and the Act does not specify a different limitation on actions, prior case law supports our application of section 340, subdivision (a).[9]

To convince us to reach a different conclusion, the appellants refer us to *Wilshire Westwood Associates v. Atlantic Richfield Co.* (1993) 20 Cal.App.4th 732, 744 [24 Cal.Rptr.2d 562] (*Wilshire Westwood*) and section 338.1.[10] Neither persuades us to a contrary view. *Wilshire Westwood* states that a three-year limitation applies to an action based on ultrahazardous activity (*Wilshire Westwood, supra,* at p. 743), but that case is distinguishable because it did not involve a cause of action for civil penalties under the Health and Safety Code. Moreover, section 338.1 establishes a five-year limitation on actions brought pursuant to chapters 6.5, 6.7, and 6.8 of the Health and Safety Code, but section 25249.5 falls within chapter 6.6.

C. *The appellants' claim for civil penalties is untimely.*

In the complaint, and also in their appellate briefs, the appellants concede that they discovered the contamination by at least May 1998, which is more than one year before this action was filed. The appellants make no argument that this claim survives the one-year limitation. Consequently, we can only conclude that this claim is untimely and the trial court did not err in so ruling.

---

[9]We express no opinion on the statute of limitation applicable to claims for injunctive relief pursuant to the Act.

[10]Section 338.1 provides: "An action for civil penalties or punitive damages authorized under Chapter 6.5 (commencing with Section 25100), Chapter 6.7 (commencing with Section 25280), or Chapter 6.8 (commencing with Section 25300) of Division 20 of the Health and Safety Code shall be commenced within five years after the discovery by the agency bringing the action of the facts constituting the grounds for commencing the action."

II. *Private nuisance.*

A. *Nuisance law.*

Anything which is injurious to health or an obstruction to the free use of property is a nuisance. (Civ. Code, § 3479.) A nuisance which "affects at the same time an entire community or neighborhood, or any considerable number of persons" is called a public nuisance. (Civ. Code, § 3480.) If a nuisance is not a public one, then it is called a private nuisance. (Civ. Code, § 3481.)

■ Depending upon its nature, a nuisance is either permanent or continuing. "A permanent nuisance is generally of a type where a single occurrence causes permanent injury, and damages are assessed once and for all. [Citation.] . . . [¶] But where the nuisance involves a use which may be discontinued at any time, it is characterized as a continuing nuisance. . . . [Citation.] The crucial test of a continuing nuisance is whether the offensive condition can be discontinued or abated at any time. [Citations.] 'In case of doubt as to the permanency of the injury the plaintiff may elect whether to treat a particular nuisance as permanent or continuing.' [Citation.]" (*Wilshire Westwood, supra,* 20 Cal.App.4th at p. 744.)

■ Relevant to this case, a current possessor of property has a cause of action against a prior possessor who created a nuisance on the property. (See *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1137 [281 Cal.Rptr. 827] (*Mangini*).)

B. *Section 338, subdivision (b), accrual of tort claims, and the delayed discovery rule.*

■ A nuisance claim alleging damage to real property is subject to the three-year limitation provided by section 338, subdivision (b). (See *Wilshire Westwood, supra,* 20 Cal.App.4th at p. 744.) If a nuisance is permanent, "the plaintiff must bring one action for past, present and future damage within three years after the creation of the permanent nuisance. [Citation.]" (*Ibid.*) However, if a nuisance is continuing, the "persons harmed by it may bring successive actions for damages until the nuisance is abated. [Citation.]" (*Ibid.*)

■ With respect to torts, generally speaking, a claim accrues and the statute of limitations "begins to run upon the occurrence of the last event essential to the cause of action, even if the plaintiff is unaware that a cause of action exists. [Citation.] The infliction of actual and appreciable harm will

commence the limitations period. [Citation.]" (*Wilshire Westwood, supra,* 20 Cal.App.4th at p. 739.) However, the discovery rule "postpones commencement of the limitation period until the plaintiff discovers or should have discovered the facts essential to his cause of action. [Citation.] Under this rule, '[p]ossession of "presumptive" as well as "actual" knowledge will commence the running of the statute.' [Citation.] A plaintiff is charged with 'presumptive' knowledge so as to commence the running of the statute once he or she has ' "notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation . . . ." ' [Citations.]" (*Id.* at p. 740.)

C. *There is a triable issue regarding the statute of limitations.*

According to the appellants, their nuisance claim survives because it was brought within three years of their discovery of the contamination and, in any event, the nuisance is a continuing one. The respondents argue that the nuisance is permanent because it has been abated and this claim is time-barred because it accrued no later than September 30, 1990, the last date on which Shachory occupied the property. Because we conclude that there is a triable issue as to whether the nuisance is a continuing one, the respondents' position lacks merit.

Whether contamination is a permanent or continuing nuisance is generally a question of fact. (See *Mangini, supra,* 230 Cal.App.3d at p. 1148.) So it is here.

Below, the respondents submitted the "no further action" letter, which stated: "This letter confirms the completion of the site investigation and remedial action for the underground storage tank(s) . . . . [¶] Based on the available information and with the provision that the information provided to this agency was accurate and representative of site conditions, no further action related to the underground storage tank release is required." This letter was sent in response to the site disclosure request prepared by Geraghty & Miller, Inc.

The site disclosure request indicated in the findings and conclusions that: (1) Due to soil vapor extraction activity, 45,870 pounds of total petroleum hydrocarbons (TPH) and TPH as $CO_2$ were removed from the soil. (2) The results of a soil vapor "rebound" test conducted in April 1995 "suggest that residual hydrocarbon-impacted soil is not present at the site." (3) Nine soil confirmation samples indicate that the remediation was effective in removing TPH and benzene, toluene, ethylbenzene, and xylene (BTEX) from the soil. (4) The groundwater treatment system was used to treat approximately

8,725,575 gallons of groundwater and was effective in removing approximately 194.50 pounds of TPH as gasoline and 59.58 pounds of BTEX through March 6, 1996. (5) The tests indicate that the groundwater treatment activities was successful in dissolving hydrocarbon concentrations in the groundwater beneath the site. (6) The tests indicate that the "groundwater treatment system [has] reached a point of diminishing return with respect to dissolved hydrocarbon recovery and the probable limit of this remedial technology (i.e., pump & treat)."

Although this evidence suggests that the contamination had been abated, also attached to the respondents' motion was the report prepared on Shamsian's behalf by Environmental Managers & Auditors, Inc., the purpose of which was to "assess if the current hydrocarbon levels in soil and groundwater in the vicinity of former [underground storage tanks] are indeed below the regulatory action levels for site closure." The report contained the following conclusions: (1) Soil samples revealed "[s]ignificantly high levels of TPH-G," benzene, ethylbenzene, and xylenes in amounts that exceed the "Maximum Soil Screening Level (maximum allowable level)." (2) "Based on laboratory results, it appears that the petroleum hydrocarbons contamination in the soil still exists in the vicinity of former [underground storage tanks]. It should be noted that the hydrocarbons contamination detected in the soil during this investigation is significantly higher than the hydrocarbons levels detected in the soil during Geraghty & Miller confirmation soil sampling conducted on October 20, 1995." (3) "Significantly high levels of benzene concentration were detected in groundwater samples collected from [various borings]." The levels exceed the maximum contaminant level (MCL) (which is set forth by the State Department of Health Services and the Environmental Protection Agency). (4) The toluene concentrations in a sample collected from one of the borings is above the MCL. (5) Certain borings revealed MTBE concentration above the MCL. (6) "Based on the laboratory results, it appears that the hydrocarbons contamination in the groundwater still exists at the subject site." (7) Due to the level of contamination, it is possible that the prior remediation at the site was "not adequate to reduce the hydrocarbons levels in the soil and groundwater below the regulatory limits for site closure." (8) Further assessment is needed to determine the source of the contamination.

As well, as we have judicially noticed, the RWQCB issued a case reopen letter to ARCO expressing concerns, inter alia, over MTBE levels.

Section 437c, subdivision (c) provides that a court shall consider "all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably

deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." Although the Geraghty & Miller, Inc. site disclosure request and the RWQCB's "no further action" letter create a reasonably deducible inference that the contamination at the site was remediated, the report prepared by Environmental Managers & Auditors, Inc., and the RWQCB's subsequent case reopen letter create an equally reasonably deducible inference that the contamination at the site still exceeds regulatory limits and was not properly remediated. As we previously indicated, we must resolve all doubt regarding the propriety of granting summary judgment in favor of the party opposing it. The evidence submitted below and the case reopen letter create doubt as to the propriety of granting summary judgment.[11]

### D. There are triable issues as to damages.

The respondents contend that the appellants' have not suffered cognizable continuing nuisance damages. This contention lacks merit.

In connection with a continuing nuisance, "[r]ecovery is limited . . . to actual injury suffered prior to commencement of each action. Prospective damages are unavailable." (*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 869 [218 Cal.Rptr. 293, 705 P.2d 866].)

The appellants' complaint alleges that the nuisance has caused them to incur costs and suffer damages. Although it was undisputed below that the appellants did not incur any costs to abate the contamination, the respondents' motions failed to eliminate a triable issue with respect to the appellants' loss of use of their property. Loss of use is a recognized measure of continuing nuisance damages. (*Santa Fe Partnership v. ARCO Products Co.* (1996) 46 Cal.App.4th 967, 980 [54 Cal.Rptr.2d 214].) The respondents argue that any loss of use was due to the appellants' voluntary decision to put a hold on developing the property. However, we decline the respondents' implied invitation to hold that the appellants were obligated to ignore the contamination in order to mitigate their damages. It is telling that the respondents did not cite any authority supporting their position.

### III. Trespass.

For purposes of this appeal, the parties treat the nuisance and trespass causes of action as presenting the same legal issues. Because the parties

---

[11]We would conclude that there is a triable issue even if we did not take judicial notice of the RWQCB's case reopen letter. However, we include it in our analysis because it bolsters our conclusion.

make no distinctions, neither do we. For that reason, we allow the trespass and nuisance causes of action to proceed in conjunction.[12]

## IV. *Negligent misrepresentation.*

The appellants concede that Shachory did not make any misrepresentations. However, they argue that there is a triable issue as to whether ARCO is liable for negligent misrepresentations made on its behalf by Geraghty & Miller, Inc., in the site closure request. We disagree.

The elements of negligent misrepresentation are well established. A plaintiff must prove the following in order to recover. "[M]isrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage. [Citation.]" (*Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices* (1989) 207 Cal.App.3d 1277, 1285 [255 Cal.Rptr. 483] (*Home Budget*).)

The complaint alleges: "Prior to their entering into the Lease, [the appellants] were given by [the owner and former owner of the property] a [site closure request] prepared by Geraghty & Miller, Inc. on behalf of ARCO concluding that the site contained no significant hydrocarbons which would prevent development. [The appellants] are informed and believe and thereon allege that Defendants knew or should have known that prospective purchasers or lessors of the Property would rely on the [site closure request] and intended that they do so."

Fatal to the appellants' position, there is nothing in the record establishing that the site closure report concludes that "the site contained no significant hydrocarbons which would prevent development." The appellants refer us to the last page of the site closure report. However, that page merely recommends, in part, that additional soil remedial activity is not required and that further active groundwater extraction and treatment be discontinued because it will not provide "any further significant benefit toward the goal of reducing dissolved hydrocarbon concentrations."

·Additionally, we note that the site closure request prepared by Geraghty & Miller, Inc., is carefully worded. It makes no representations about the level of contamination at the site. Rather, it summarizes the remediation efforts, the removal of contaminants, and the results of various tests. While it is

---

[12]We express no opinion as to whether the trespass cause of action would survive had the parties discussed it separately.

possible that the site closure report may have been misleading, if in fact the site was still impermissibly contaminated after the remediation efforts, that still does not equate to liability for ARCO. ▮▮▮ Negligent misrepresentation is narrower than fraud. While a person can be held liable for fraud for the "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact" (Civ. Code, § 1710), negligent misrepresentation requires a false statement of a past or existing material fact (*Home Budget, supra,* 207 Cal.App.3d at p. 1285). ▮▮▮ The appellants do not, however, contend that the site closure request falsely represented removal of contaminants, the results of the tests, or any other such facts. As a result, the site closure request is not actionable.

## V. *Declaratory relief.*

▮▮▮ The appellants posit that the seventh cause of action, which is designated as one for both declaratory relief and equitable indemnity, presents triable issues as to the respondents' obligation to reimburse the appellants' remediation costs, and as to the rights and obligations of the parties. While we disagree with the former point, we agree with the latter.

Strictly speaking, it is a misnomer for the appellants to refer to this cause of action as one for anything other than declaratory relief. The appellants do not seek equitable indemnity. Rather, they seek a declaration of their right to be equitably indemnified should they be held liable in any manner related to contaminants on the property. Moreover, they seek declarations that the respondents are solely liable in any legal or administrative actions brought by the United States government, the State of California, or private persons. As a result, we analyze this cause of action purely as one for declaratory relief.

The respondents contend that the declaratory relief cause of action fails if they cannot be held liable on any of the preceding causes of action. However, as we have analyzed, there are triable issues as to the nuisance and trespass causes of action. Furthermore, section 1060 provides that a person who desires a declaration of his or her rights and duties with respect to another may, in cases of actual controversy, bring an action for declaratory relief. We conclude that this cause of action presents an actual controversy concerning who is responsible for any liability arising out of contamination located on the property.

## VI. *Preliminary and permanent injunction.*

Correctly, the respondents state that a request for injunctive relief is not a cause of action. (*Shell Oil Co. v. Richter* (1942) 52 Cal.App.2d 164, 168 [125

P.2d 930].) Therefore, we cannot let this "cause of action" stand. However, that said, on remand the trial court shall permit the appellants to amend their nuisance cause of action to include their request for injunctive relief.

## DISPOSITION

Summary judgment is reversed. Upon remand, summary adjudication shall be granted as to the Health and Safety Code section 25249.5, negligent misrepresentation, and injunctive relief causes of action. Summary adjudication shall be denied as to the nuisance, trespass, and declaratory relief causes of action, and the trial court shall permit the appellants to amend their nuisance cause of action to request injunctive relief. The parties shall bear their own costs on appeal.

Boren, P. J., and Doi Todd, J., concurred.