Filed 12/24/14  Sadeghi v. Snell CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| SHAHEEN SADEGHI, | |
| Plaintiff and Appellant, | G048583 |
| v. | (Super. Ct. No. 30-2012-00614531) |
| DELILAH SNELL, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge.  Affirmed.

Newmeyer & Dillion, John E. Bowerbank and Jack M. Rubin for Plaintiff and Appellant.

Leopold, Petrich & Smith, Walter R. Sadler and Jamie Lynn Frieden for Defendant and Respondent.

\*            \*            \*

Plaintiff and appellant Shaheen Sadeghi appeals from a judgment entered after the court granted a special motion to strike under Code of Civil Procedure section 425.16 (section 425.16; anti-SLAPP motion) his complaint for libel and libel per se, slander and slander per se, violation of privacy, intentional and negligent interference with prospective economic advantage, and violation of Business and Professions Code section 17200 (unfair competition)[1] against defendant and respondent Delilah Snell. Plaintiff contends the court erred because the causes of action did not arise from protected activity and, even had they, he demonstrated a probability of prevailing on the merits. We conclude the court correctly granted the anti-SLAPP motion and affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiff owns the The LAB (Little American Business) Antimall (LAB) and The CAMP (CAMP) retail shopping centers in Costa Mesa.

Between 2006 and 2008 defendant worked at a restaurant located in the LAB. In early 2006 she opened a retail store, the Road Less Traveled (Road) in Santa Ana. At that time it was a "green/natural living goods store."

In December 2011 the *OC Weekly*[2] published an article, written by Michelle Woo (Woo), about plaintiff and the LAB, entitled "Meet Shaheen Sadeghi, the LAB Man" (Article). The Article was lengthy. The trial court counted 68 paragraphs in the downloaded version. Woo interviewed plaintiff, competitors, and tenants, current and former, for the Article. As the trial court noted, some of their comments about plaintiff were "laudatory, some not."

As summarized by the trial court's ruling, plaintiff "is prominently featured on the front page of the issue, with a drawing of the plaintiff occupying perhaps two-

---

[1] He also listed a purported ninth cause of action for injunctive relief; however that is merely a remedy, not a substantive claim. (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 984-985.)

[2] The editor of the *OC Weekly*, Gustavo Arellano, is identified in the article as defendant's boyfriend.

thirds of the cover and large print identifying [him] as "THE LAB MAN." The cover's synopsis of the story read: "In his quest to hipsterize OC retail, Shaheen Sadeghi has built quirkily beautiful properties – and gained more than a few critics." (Capitalization omitted.) The Article included four color pictures of plaintiff's properties.

The Article chronicled plaintiff's career background, including his time as an apprentice fashion designer and stints in management for clothing stores, including the presidency of Quiksilver. It was there he came to his understanding of shopping preferences of twentysomethings, leading him to his development of the LAB, built around an abandoned military factory. When it opened in 1994 the New York Times dubbed it the "'frontier of shopping.'" The Article quoted one city official calling the development "a renaissance on Bristol Street [that] brought out the eclecticism that is Costa Mesa."

The CAMP, opened in 2002, catered to different consumers and tenants, and was depicted as "a woodsy, eco-hipster retreat."

The Article spent some time describing plaintiff's then current projects, "overhaul[ing] Center Street in downtown Anaheim" and rehabbing the former Sunkist Packing Company building, also in Anaheim into a "gourmet food hall." It also reported a proposed project in San Clemente that was not approved by the city council, followed by plaintiff's suit against the city.

The Article noted plaintiff was "often described as a 'visionary' in developers' circles, a maverick who is making Orange County less Orange County . . . . His original 'anti-malls,' the Lab and the Camp in Costa Mesa, reign as hipster meccas, drawing flocks of young urbanites who recycle and eat vegan and refuse to buy sweaters in bulk at the Gap." The Article depicted plaintiff as not just a retail developer but the "Curator of Cool."

Defendant was quoted toward the end of the Article, which recounted her discussion with plaintiff about the possibility of leasing space in the CAMP to Road.

3

Defendant "sa[id] the rent rate [plaintiff] gave was way too high, at least triple what she was paying, and she declined the offer. Then, she claims, he made a threat. [¶] 'He basically said to me, "If you don't move into my center, I will copy your business,"' she says."

The next paragraph went on to explain defendant "believe[d] her store is the model for the Camp's SEED People's Market, . . . [which plaintiff] owns . . . with his wife, Linda. [Defendant] claims that SEED has approached many of the vendors featured at Road . . . and even used a photo of her shop in a promotional email sent out to customers. (The *Weekly* has a copy of the email.) [¶] When [plaintiff] warned [defendant] he would copy her, [defendant] was stunned–and then furious. 'I just thought, "Go ahead and try,"' she says. 'Because I will tell you, having a green store isn't about going out and buying a whole bunch of products. . . .'"

Plaintiff was quoted as responding to defendant's statements, saying, "'I think she's full of it.' He says his business plan for SEED was dated 'five years before she developed a business plan.' [¶] 'It's a whole different store, whole different vibe,' he says, 'and it has nothing to do with Road . . . .'"

There was one other unattributed sentence earlier in the Article, stating, "One woman claims [plaintiff] modeled the concept for a new store after her own when she decided not to sign a lease."

The Article also stated plaintiff has "a legion of foes, including current, former and prospective tenants and even city leaders." One former tenant who leased space in the CAMP for six years was quoted, "'[Plaintiff] is not out to enhance the community–he's out for [himself], period.' . . . 'He's the most terrible landlord I've ever encountered.'"

The Article reported plaintiff had been "accused of luring inexperienced entrepreneurs into his retail centers, then pushing them out with outlandish fees and climbing rent. 'People want to believe in his mission, but it's all a façade,' says one

4

anonymous tenant. 'He'll make your business cool, but at what expense?'" Yet other tenants and former tenants praised plaintiff for giving them opportunities to build their businesses.

The record contains six pages of online comments in response to the Article.

In October 2012, *The OC Weekly*'s cover story was entitled, "Child Molesters, Serial Killers and Dana Rohrbacher: OC's Scariest People, 2012!" Several pages into the article plaintiff was listed at position number 31. It listed the LAB, the CAMP and the Anaheim projects as "Cool." As "Not so cool," it stated plaintiff had "been accused of stealing ideas from indie business owners and preying on inexperienced entrepreneurs. He's known to lure new companies into his retail centers, but if these 'little guys' turn out to be 'weak tenants,' in his words, he'll push them out, typically by spiking the rent. One former tenant summed it up best: '[Plaintiff] is not out to enhance the community–he's out for [himself], period." A Google search for this article brought it up as the first result and listed the title as "Child Molesters, Shaheen Sadeghi, serial killers, Dana Rohrbacher and so many more!"

The LAB's Web site as of January 2013 listed its sales as rivaling those of South Coast Plaza. It also boasted The LAB's unique tenant mix "continue[s] to garner international attention." And the center has "become the creative heart of the blossoming Sobeca [South on Bristol Entertainment, Culture, Arts] arts district in Costa Mesa . . . ."

It describes the CAMP as a "community driven center," "environmentally focused," "highlighting individual sports" "and progressive eating choices."

Plaintiff gave a TEDx speech in 2010 on the subject of his retail and consumer philosophy entitled "Culture is The New Currency."

The record contains numerous articles from sources including the New York Times (five articles about the LAB plus at least one other); the Los Angeles Times (six about the LAB, one about the Anaheim projects, and at least one other); the Orange

County Register (one about the LAB and another about plaintiff's lifestyle); Coast Magazine (two lifestyle articles); and Shopping Center Today Online. In addition searches of plaintiff's name yielded over 27,000 results.

In November 2012, plaintiff filed the instant action against defendant, alleging the eight causes of action listed above. The gravamen of these claims is that defendant "falsely and maliciously accus[ed] [p]laintiff of threatening to copy her idea of her store if she did not move into the Camp as a tenant."

**DISCUSSION**

*1. Introduction and Applicable Law*

Section 425.16, subdivision (b)(1) provides a party may bring a special motion to strike any "cause of action against [that party] arising from any act [the party commits] in furtherance of the . . . right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." An "'act in furtherance of a person's right of . . . free speech under the United States or California Constitution in connection with a public issue' includes: . . . any written or oral statement or writing made . . . in a . . . public forum in connection with an issue of public interest[] or . . . any other conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(3), (4).)

When we review a judgment of dismissal after the grant of an anti-SLAPP motion, we "must engage in a two-step analysis under this section. First [we have] to determine whether the defendant has met [his] burden to show '"that the challenged cause of action is one arising from protected activity."' [Citation.] If so, the burden shifts to the plaintiff[] to show the likelihood of prevailing on the claim. [Citation.] '"We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable

6

to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" [ Citations.]' [Citation.]" (*Rivera v. First DataBank, Inc.* (2010) 187 Cal.App.4th 709, 714-715.)

We review an order denying an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.) "If the trial court's decision is correct on any theory applicable to the case, we affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion." (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573.)

*2. Protected Speech*

The speech at issue here is defendant's statement that plaintiff said he would copy her business if she did not lease space in the CAMP.[3] Plaintiff contends defendant has not met her burden to show this statement fell within section 425.16, subdivision (e)(3) or (e)(4), i.e., that defendant's statement was made in a public forum regarding an issue of public interest or that it was an exercise of her right of free speech regarding a public issue or an issue of public interest.

There is no question the *OC Weekly* is a public forum. (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 478 ["'public forum' includes a communication vehicle that is widely distributed to the public and contains topics of public interest"].)

Plaintiff claims defendant's statement is not a public issue or a matter of public interest because it merely concerned a potential private lease transaction between him and defendant. Plaintiff's interpretation of the terms public issue and public interest is much too narrow.

---

[3] Throughout his briefs, plaintiff insists defendant also stated he had stolen her business model, but that is not alleged anywhere in the complaint, which frames the issues in an anti-SLAPP motion. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

"'[A]n issue of public interest' within the meaning of section 425.16, subdivision (e)(3) [and by virtue of identical language, subdivision (e)(4),] is any issue in which the public is interested." (*Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1042, italics omitted.) The issue itself is not required to be "significant." (*Ibid.*)

Further, while "''[t]he focus of the speaker's conduct should be the public interest . . . [citation],''" "[n]evertheless, it may encompass activity between private people. [Citation.]" (*Rivera v. First DataBank, Inc.*, *supra*, 187 Cal.App.4th at p. 716.)

The record reflects plaintiff and his business activities are matters of public interest. Plaintiff portrays his businesses as containing environmentally friendly tenants, and his Web site declares the LAB's unique mix of tenants draws international attention. He claims his centers are the heart of a burgeoning arts and entertainment center in Orange County, with a goal to make "Orange County less Orange County." And he boasts they have sales comparable to those at South Coast Plaza.

These things are of interest to developers, consumers, and the culture and entertainment public. As the trial court stated, "[e]co-friendly merchandising, rehabilitation of old buildings, and the goal of making Orange County a hip community are matters of public interest." The identity of plaintiff's tenants and his business practices fall within that umbrella.

Further, as the trial court noted, the *OC Weekly* found plaintiff was a matter of public interest and believed a piece about him would contribute to its circulation. And the paper, not defendant, initiated the Article.

Plaintiff relies on *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, which states that "public interest" includes "private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a government entity." (*Id.* at p. 115) He argues defendant's statement does not fit into that matrix. But *Du Charme* reiterated the dictate to interpret

8

"public interest" broadly (*ibid*.), and on its face the quoted language shows it was not intended to be an exclusive definition of public interest.

Cases have upheld a finding of public interest where the speech was of interest to a particular community and not connected with a governmental entity. For example speech regarding the writing, casting, and airing of an episode of *CSI* was an issue of public interest to those who followed the show. (*Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133, 144.) The proposed development of waterfront property was a matter of public interest sufficient to bring communications regarding the development within protection of the statute. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1233.) And statements on a Web site regarding a dispute between two cat breeding groups were found to be a matter of public interest in that community. (*Traditional Cat Assn, Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 397.)

Moreover, ""there is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities . . . ." [Citation.]' [Citation.]" (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 677-678.) For example, in *Nygård, Inc. v. Uusi-Kerttula, supra*, 159 Cal.App.4th 1027, comments made to a Finnish magazine by a former employee of the plaintiff about the plaintiff's founder were found to be matters of public interest. The record showed the Finnish public were particularly interested in the founder and information about his famous home. The "article was intended to satisfy that interest." (*Id*. at p. 1042.)

The lifestyle pieces about plaintiff are evidence the public is interested not only in his businesses but in his personal life as well.

As an alternate ground, plaintiff maintains the statement is not a matter of public interest because it is not at all connected with governmental affairs or a governmental entity's impact on a community. But "public interest" has been construed

9

to include issues that involve private citizens and entities. (*Du Charme v. International Brotherhood of Electrical Workers, supra,* 110 Cal.App.4th at p. 115.)

In sum, defendant met her burden to show the statements concerned matters of public interest.

*3. Probability of Prevailing on the Merits*

Because defendant showed the causes of action arose from protected activity, the burden shifted to plaintiff to show the probability he could prevail on the merits of his claims. We agree with the trial court that he did not do so.

Each of the eight causes of action was based on defendant's statement that plaintiff said he would copy her business if she did not lease space in the CAMP. It was specifically alleged in the five defamation causes of action and incorporated by reference in the other three causes of action for intentional and negligent interference with prospective economic advantage and unfair competition in violation of Business and Professions Code section 17200. In the two common law tort causes of action plaintiff alleges defendant committed unlawful slander, libel or invasion of privacy. In the unfair competition cause of action plaintiff generically alleges defendant engaged in unfair business practices.

To make out a prima facie case, plaintiff must show the statement defendant made was wrongful. "The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. [Citation.]" (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1369.)

"Whether a statement can reasonably be given any defamatory interpretation is a legal question that we must resolve by determining the sense or meaning of the statements, under all the circumstances attending the publication, according to the natural and popular construction which would be ascribed to them by the average reader. [Citation.]" (*Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th

1, 5-6.)  A review of defendant's statement convinces us that, under all the circumstances, an average reader would not attribute a defamatory meaning to it.

Contrary to plaintiff's claim, defendant did not accuse him of stealing or committing a crime.  Moreover, the statement plaintiff would copy defendant's business model did not subject plaintiff to """"hatred, contempt, ridicule, or obloquy."""  (*Nygård, Inc. v. Uusi-Kerttula*, *supra*, 159 Cal.App.4th at p. 1047-1048; Civ. Code, § 44.)  A reasonable member of the public would not be shocked or troubled on reading that.  There are businesses familiar to the public that copy their competitors.  The trial court mentioned Pepsi and Coke.  Fast food hamburger restaurants are another prime example.  Those businesses are not subject to obloquy or shame but rather are heavily patronized.  That is the nature of competition among businesses.

Plaintiff relies on the alleged wrongful nature of defendant's statement to support his causes of action for interference with prospective economic advantage and unfair competition.  But because the statement was not defamatory or otherwise wrongful, it cannot be the basis of any cause of action.  Thus, plaintiff has not met his burden and the motion was properly granted.

## DISPOSITION

The judgment is affirmed.  Defendant is entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.

11