Filed 12/16/20  Carranza v. Holdman CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

|  |  |
|---|---|
| SPARKY CARRANZA et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> C'JILES HOLDMAN, <br><br>     Defendant and Respondent. | A157862 <br><br> (Alameda County <br> Super. Ct. No. RG17869247) |

Sparky Carranza and Maureen Dorsey (collectively, plaintiffs) filed a lawsuit against their neighbor, C'Jiles Holdman, alleging claims for trespass, nuisance, and negligence premised on subsurface water intrusion from Holdman's property.  The trial court granted Holdman's motion for summary judgment.  As relevant here, it concluded the trespass and nuisance were permanent, and that the complaint was time-barred because plaintiffs filed their lawsuit more than three years after learning of the water intrusion and its cause (Code Civ. Proc. § 338, subd. (b)).[1]

We reverse the grant of summary judgment as to the trespass and nuisance claims.  We conclude plaintiffs established a triable issue of

---

[1] Undesignated statutory references are to the Code of Civil Procedure. The ruling on plaintiffs' negligence claim is not at issue.

1

material fact that the water intrusion was a continuing trespass and nuisance. As a result, the statute of limitations did not bar those claims as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs live in the Oakland hills. In 2010, Holdman purchased the adjacent property, uphill. Holdman's backyard has an irrigation system and a 1950's-era pool. There is no formal drainage system in the backyard, just a set of "concrete blocks . . . [and] wood" where water drains "directly to the earth."

In 2017, plaintiffs filed a lawsuit against Holdman. Plaintiffs' verified complaint alleged water flowing from Holdman's property "degraded the land and foundation of [their] property." According to the complaint, plaintiffs noticed the water intrusion in 2011; as time went on, the water flow increased and continued, damaging their home and the surrounding walkways and pavement. Plaintiffs alleged the continuing violation doctrine applied because the water damage was gradual and involved a series of "small harms." The complaint further alleged Holdman could have abated the "inordinate volume of water" flowing from his property.

### A.

### *Summary Judgment Motion*

Holdman's summary judgment motion argued the three-year statute of limitations barred the complaint. According to Holdman, plaintiffs discovered water seeping onto their property in 2009, before he purchased his property. By 2010, plaintiffs determined the water was coming from a "charged water line" on Holdman's property and asked him to fix it. Plaintiffs installed a drainage system in their yard to mitigate the water coming from Holdman's property in late 2011. In 2012, plaintiffs complained

2

to city officials about the water intrusion; they also consulted a contractor regarding drainage solutions. The motion for summary judgment assumed the water intrusion was a permanent trespass or nuisance: Holdman disavowed application of the continuing violation doctrine to property damage cases.

In opposition, plaintiffs argued the complaint was not time-barred because there was a triable issue of material fact as to whether the trespass and nuisance were "ongoing and continuous." Plaintiffs offered evidence that they noticed the water flow in 2011 or 2012, that it "varied over time," and that it continued through the filing of the complaint in 2017. Holdman never had his pool or irrigation lines inspected or repaired. He installed a drainage system in his front yard, but not in his backyard.

Plaintiffs submitted expert testimony regarding the source of the water discharge. Hillel Salomon, owner of a leak detection service, determined water was leaking from Holdman's backyard irrigation system and from plumbing lines connected to his pool. Salomon also opined the pool had a "passive leak" which caused water to leak "into the soil"; the pool, however, did not have a structural defect. Another expert opined the water seepage was from "the pool and/or irrigation" line.

Plaintiffs also offered expert testimony on solutions to the problem. Engineer Eric Burtt described his extensive experience in the field of leak repair and abatement. Burtt averred the water coming from Holdman's property was reasonably abatable "through a variety of means including . . . repairing  . . . the visibly existing downhill drain," and installing a "drainage system" or a "sump pump" in Holdman's backyard

to drain and discharge water to the street.  Burtt stated the cost to install a sump pump was "in the range of $6,000."  Salomon suggested replacing the irrigation valves and fixing the leak in the irrigation line.

The court declined to consider Holdman's late-filed reply.  Holdman did not object to plaintiffs' evidence.

B.

*Order Granting Summary Judgment*

The court granted the summary judgment motion, concluding the three-year statute of limitations barred the complaint.  According to the court, plaintiffs' claims accrued no later than 2012, when they told city officials Holdman "was causing water from his property to migrate to theirs" and that he was refusing to fix it.  The court determined the water intrusion was a permanent trespass or nuisance, despite acknowledging the water flow had not ceased since 2010 and that there were "reasonable remedial measures" to the problem.

The court entered judgment for Holdman.

DISCUSSION

I.

*Standard of Review*

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  "Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action."  (§ 437c, subd. (p)(2).)  A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party

4

opposing the motion in accordance with the applicable standard of proof."
(*Aguilar*, at p. 850.) "In ruling on the motion, the court must view the
evidence in the light most favorable to the opposing party. [Citation.] We
review the record and the determination of the trial court de novo." (*Shin v.
Ahn* (2007) 42 Cal.4th 482, 499.)

II.

*Summary Judgment Was Improper on Plaintiffs'
Trespass and Nuisance Claims*

The discharge of water onto another's property may constitute a
trespass and nuisance. (*Mangini v. Aerojet-General Corp.* (1991)
230 Cal.App.3d 1125, 1136.) We use the term nuisance to describe
trespass and nuisance claims. (*Starrh & Starrh Cotton Growers v. Aera
Energy LLC* (2007) 153 Cal.App.4th 583, 594 (*Starrh*).)

A.     Permanent Versus Continuing Nuisances

The statute of limitations for a nuisance claim is three years. (§ 338,
subd. (b).) Whether the statute of limitations bars a nuisance cause of action
"turns on whether the wrongdoing is permanent or continuing." (*Madani v.
Rabinowitz* (2020) 45 Cal.App.5th 602, 607–608 (*Madani*).) And "[w]hether a
nuisance is continuing or permanent depends 'on the type of harm suffered.'
[Citation.] '[P]ermanent nuisances are of a type where " 'by one act a
permanent injury is done, [and] damages are assessed once for all.' " '
[Citation.] . . . For a permanent nuisance, damages are 'complete when the
nuisance comes into existence,' and an action must generally be brought
'within three years after the permanent nuisance is erected.' " (*Lyles v. State
of California* (2007) 153 Cal.App.4th 281, 291.) Damages are ordinarily
based on the diminution in value of the land occasioned by the permanent
nuisance. (*Starrh, supra,* 153 Cal.App.4th at p. 592.)

5

"In contrast, a continuing [nuisance] is an intrusion under circumstances that indicate the [nuisance] may be discontinued or abated. . . . Continuing [nuisances] are essentially a series of successive injuries, and the statute of limitations begins anew with each injury." (*Starrh, supra,* 153 Cal.App.4th at p. 592.) "Thus, if a . . . nuisance is continuing, ' "an action may be brought at any time to recover the damages which have accrued within the statutory period, although the original [nuisance] occurred before that period." ' " (*Madani, supra,* 45 Cal.App.5th at p. 608.) To the extent the nuisance goes unabated, the plaintiff could pursue prospective loss through successive actions. (*Starrh,* at p. 592.)

"Nuisances found to be permanent . . . include 'solid structures, such as a building encroaching upon the plaintiff's land [citation], . . . or regrade of a street for a rail system.' " (*Lyles v. State of California, supra,* 153 Cal.App.4th at p. 291.) A " 'continuing nuisance is an ongoing or repeated disturbance, such as . . . one . . . caused by noise, vibration or foul odor.' " (*Ibid.*) Substances contaminating, or leaking onto, a neighboring property have been deemed continuing nuisances. (*Wilshire Westwood Associates v. Atlantic Richfield Co.* (1993) 20 Cal.App.4th 732, 744–745 [gasoline from leaking underground petroleum tanks was a "continuing nuisance"]; *Starrh, supra,* 153 Cal.App.4th at p. 597 [infiltration and contamination from wastewater discharge was a "classic continuing trespass"].)

Whether a nuisance is permanent or continuing "is generally a question of fact." (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 980.) To determine whether a nuisance is continuing, courts consider whether the activity is " 'currently continuing,' " and whether " 'the impact of

6

the condition will vary over time.' " (*Starrh, supra,* 153 Cal.App.4th at p. 594.) An important factor, however, is whether the " ' "nuisance can be discontinued or abated." ' " (*Madani, supra,* 45 Cal.App.5th at pp. 608–609.) Under this " 'abatability test' " a "nuisance is continuing if it 'can be remedied at a reasonable cost by reasonable means.' " (*Id.* at p. 609.)[2]

It is plaintiffs' burden to establish the nuisance is continuing. Where a defendant proves a harm occurred more than three years before the complaint was filed, the lawsuit is timely if plaintiffs prove the nuisance is continuous. (CACI No. 2030 (May 2020) Affirmative Defense—Statute of Limitations—Trespass or Private Nuisance, p. 1238.) Courts "have maintained a preference for finding a *continuing* nuisance, both to protect the plaintiff from 'contingencies' such as unforeseen future injury and the statute of limitations itself [citations] and to encourage abatement of nuisances [citations]. And the courts have consistently adhered to [the] rule that in a case in which the distinction between permanent and continuing nuisance is close or doubtful the plaintiff will be permitted to *elect* which theory to pursue." (*Capogeannis v. Superior Court* (1993) 12 Cal.App.4th 668, 678–679.) That choice, however, must be supported by "evidence that under the circumstances the nuisance may properly be considered continuing rather than permanent." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1217.)

---

[2] Abate does not necessarily mean eliminate. Merriam-Webster defines "abate" as to "put an end to," to "reduce in degree or intensity," or to "reduce in value or amount." (Merriam-Webster Dict. Online (2020) <https://www.merriam- webster.com/dictionary/abate> [as of Dec. 16, 2020].) California cases are in accord. (*Starrh, supra,* 153 Cal.App.4th at p. 596 [harm from wastewater discharge could be abated, e.g., "reduced or discontinued altogether"]; *Mangini v. Aerojet-General Corp., supra,* 12 Cal.4th at p. 1103 [equating abatement with possibility of remediation].)

B.    Plaintiffs Created a Triable Issue of Material Fact as to Whether the Water Intrusion was a Continuing Nuisance

Plaintiffs alleged the water intrusion was a continuing nuisance. And in opposition to the summary judgment motion, they offered evidence the nuisance was continuing. Plaintiffs' evidence tended to show the water intrusion varied in intensity and continued through the filing of the complaint. (*Starrh, supra,* 153 Cal.App.4th at p. 594.) Plaintiffs also offered evidence the problem could be fixed " 'at a reasonable cost by reasonable means.' " (*Madani, supra,* 45 Cal.App.5th at p. 609.)

As Holdman acknowledges, this evidence was undisputed. Viewing the evidence—as we must—in the light most favorable to plaintiffs, we conclude there is a triable issue regarding the statute of limitations, i.e., whether the nuisance was continuing. Summary judgment was therefore improper. (*Capogeannis v. Superior Court*, *supra,* 12 Cal.App.4th at pp. 680, 683 [expert declaration averring contamination was " 'abatable through environmental remediation' " created triable issue of fact that leaking fuel tanks were continuing nuisance]; *Shamsian v. Atlantic Richfield Co., supra,* 107 Cal.App.4th at p. 982 [evidence regarding abatability of groundwater contamination was sufficient to defeat summary judgment].)

Holdman's argument to the contrary is not persuasive. For example, Holdman argues plaintiffs failed to demonstrate the nuisance was "abatable at a reasonable cost" because they did not offer evidence on the cost to fix the "deep pool leak." Holdman's myopic focus on the pool is misguided. As *Starrh* noted in a similar context, "it is not the pond's structure that constitutes a [nuisance]. Instead, it is the produced water that permeates through the pond that is a [nuisance]." (*Starrh, supra,* 153 Cal.App.4th at p. 596.) Moreover, to defeat summary judgment, plaintiffs had to create a triable issue, i.e., offer evidence which would allow a reasonable trier of fact

8

to find the nuisance was continuing.  (*Aguilar*, *supra,* 25 Cal.4th at p. 850.)
As discussed above, plaintiffs did that.  They offered evidence that the
intrusion was continuing and variable and that Holdman could diminish, if
not entirely eliminate, the ongoing harm.

Nor are we persuaded that Burtt's declaration failed to create a triable
issue of fact on whether the intrusion was reasonably abatable.  In his
declaration, Burtt described his expertise in the field of leak repair and
abatement and suggested three ways to reduce or eliminate the water
intrusion from Holdman's property:  cleaning and repairing a "visibly
existing" downhill drain on Holdman's property; installing a drainage system
in Holdman's backyard; and/or installing a sump pump in Holdman's
backyard.  Burtt's use of the phrase "visibly existing" suggests he inspected
Holdman's property or reviewed photographs of it, thus providing a factual
basis for his opinion.  (*Shugart v. Regents of University of California* (2011)
199 Cal.App.4th 499, 506 [while "not a model of specificity," expert
declaration was sufficient to create a triable issue of material fact].)

Common sense suggests all three methods would reduce or eliminate
water intrusion on plaintiffs' property; common sense also suggests that the
cost to fix the drain and/or install a drainage system would be relatively
modest, particularly in light of evidence that Holdman had installed a
drainage system in his front yard.  Burtt provided an estimate for the cost of
purchasing and installing a sump pump—an amount that was not challenged
in the trial court or on appeal.  We conclude that Burtt's declaration, when

9

considered as part of the factual record as a whole, was sufficient to create a triable fact as to whether the water intrusion was reasonably abatable.[3]

Holdman's reliance on *Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478 (*Bookout*) is unavailing.  In that case, a railroad company built a raised railway line on its property in the late 1800's.  In the 1940's, the company installed iron pipes under the railway bed to capture accumulated rainwater; three decades later, another entity installed a junction box to divert the water.  (*Id.* at p. 1481.)  The junction box did not function properly, and when it rained, the adjacent property flooded.  (*Ibid.*)  Several years after purchasing the adjacent property and noticing the flooding, the plaintiff sued the railroad for trespass and nuisance.  (*Id.* at p. 1482.)  At the conclusion of a bench trial, the court granted the railroad's motion for judgment on the pleadings based on the statute of limitations.  (*Id.* at p. 1489.)

The *Bookout* court affirmed, concluding the railway bed and pipe system was a permanent nuisance.  (*Bookout, supra,* 186 Cal.App.4th at pp. 1489–1490.)  As the court explained, "the raised railbed and culvert pipe have been in place at least since 1940 and most probably for over 100 years. . . .  [T]here is nothing to suggest the pipe is temporary or might be modified at any time. . . .  'The cases finding the nuisance complained of to be unquestionably permanent in nature have involved solid structures, such as a building encroaching upon the plaintiff's land . . . .'  [Citation.]  The solid

_____

[3] Importantly, Burtt's declaration was not the only evidence supporting plaintiffs' contention that the water intrusion was abatable at a reasonable cost.  Salomon's declaration provided evidence that the source of the water intrusion was Holdman's pool and/or backyard irrigation system, and he suggested repairs which appear consonant with those ordinarily carried out by a homeowner as ongoing maintenance.

structure here is no less permanent because it is built on a defendant's land." (*Ibid.*)

*Bookout* has no application here because it arose after a bench trial, where the trial court weighed the evidence and determined the nuisance was permanent. (*Bookout, supra,* 186 Cal.App.4th at pp. 1489–1490.) On summary judgment, the trial court must view the evidence in the light most favorable to plaintiffs to determine whether there is evidence which would allow a reasonable trier of fact to find the nuisance is continuing. (*Aguilar, supra,* 25 Cal.4th at p. 850.)

*Bookout* is also factually distinguishable. The irrigation lines and plumbing lines connected to Holdman's pool bear no resemblance to the century-old, solid metal structure in *Bookout.* A pool may be, as Holdman argues, a "permanent" structure, but that does not mean a potential leak emanating from that structure is a permanent nuisance, particularly where plaintiffs offered evidence the pool did not have a structural defect.

We conclude the court erred by granting summary judgment because there is a triable issue regarding whether the water intrusion was a continuing nuisance. As a result, the statute of limitations did not bar the complaint as a matter of law. (*Shamsian v. Atlantic Richfield Co., supra,* 107 Cal.App.4th at p. 980.) Having reached this conclusion, we need not address plaintiffs' other argument regarding the statute of limitations.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with instructions to deny the motion for summary judgment as to plaintiffs' trespass and nuisance claims but grant summary adjudication as to plaintiffs' negligence claim. Plaintiffs are entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

11

_____
Reardon, J.*

WE CONCUR:


_____
Simons, Acting P. J.


_____
Burns, J.


A157862


* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.