Filed 12/8/22  Williams v. Forum Entertainment CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LAKISHA WILLIAMS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FORUM ENTERTAINMENT LLC,<br><br>    Defendant and Respondent. | B314514<br><br>Los Angeles County<br>Super. Ct. No. 20STCV04595 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge.  Affirmed.

Downtown L.A. Law Group, Anthony Werbin; and C. Athena Roussos for Plaintiff and Appellant.

Barbanel & Treuer, Alan H. Barbanel, Henry C. Truszkowski and Tony Abdollahi for Defendant and Respondent.

_____

# INTRODUCTION

While attending a concert in Los Angeles, plaintiff and appellant Lakisha Williams slipped in a puddle of liquid and fell down some stairs. She sued defendant and respondent Forum Entertainment LLC (the Forum) for negligence and premises liability. The trial court granted the Forum's motion for summary judgment on the ground that Williams had not established a triable issue of material fact that the Forum had actual or constructive notice of the spill. We affirm.

# BACKGROUND

## 1. Factual Background

On April 21, 2018, Williams and a friend attended a concert at the Los Angeles Forum. They were seated in section 205, row 19, seats 11 and 12. Section 205 is in the upper bowl, and row 19 is near the top of that section.

Williams's seats were accessible by a staircase with a center handrail. According to the Forum, the steps are treated with a slip-resistant coating and marked with yellow reflective paint. Williams testified in her deposition, however, that there was no yellow reflective paint on the stairs the night of the concert.

About 90 minutes into the show, Williams and her friend left their seats to use the restroom. Williams walked down the left side of the stairs. It was dark, and Williams looked down at her feet.

After taking five or six steps, Williams slipped in a large amount of liquid—possibly a mixture of beer and soda. The liquid was sticky. Her feet slipped out from under her; she slid down two or three steps and landed on her right hip.

Williams's friend screamed. Two ushers stationed nine or ten feet away on the landing below came to help. Williams suffered injuries to her hip, shoulder, and lower back.

## 2.    Complaint

Williams filed the operative complaint on February 4, 2020, asserting causes of action for negligence and premises liability.[1] She alleged that while descending stairs at a concert, she stepped on a liquid substance, which caused her to slip, fall, and sustain injuries. She claimed that the steps were "not properly installed, maintained, cleaned and/or protected at said property causing Plaintiff to sustain the injuries and damages as hereinafter alleged." By her action, Williams sought to recover general damages, compensatory damages, and costs of suit.

## 3.    Summary Judgment Proceedings

The Forum moved for summary judgment on the ground that Williams's factually devoid discovery responses on the issues of actual and constructive notice of the spill established that there was no triable issue of material fact. Williams opposed the motion, arguing that her deposition testimony that ushers were standing approximately 10 feet from the spill raised an inference of constructive notice.

The court granted the Forum's motion for summary judgment. The court reasoned: "plaintiff does not provide any facts regarding when the area had last been inspected or cleaned.

---

[1]    The initial complaint sued The Madison Square Garden Company, but the complaint was amended on August 22, 2020, to add Forum Entertainment LLC (formerly known as MSG Forum LLC) as a defendant.

3

Plaintiff attempts to impute knowledge onto Defendant by inferring that inspections were not being performed and that the condition must have existed for long enough that it could have been discovered, but does not provide factual allegations supporting that part of the argument.  Without the necessary factual support, Plaintiff cannot demonstrate that Defendant knew or should have known about the condition that caused her injury."  Accordingly, "it becomes impossible for the Plaintiff to prove her claims."

### 4.    Judgment and Appeal

The court signed and entered a judgment in favor of the Forum on July 19, 2021.  Williams timely appeals.

## DISCUSSION

Williams contends the court erred in granting summary judgment because there are triable issues of material fact as to whether the Forum had actual or constructive notice of the spill. We disagree.

### 1.    Standard of Review

The standard of review is well established.  "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id*. at p. 850, fn. omitted; Code Civ. Proc., § 437c, subd. (c).)  The pleadings determine the issues to be addressed by

4

a summary judgment motion.  (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885, reversed on other grounds by *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment.  (*Saelzler,* at p. 768.)  In performing an independent review of the granting of summary judgment, "we follow the traditional three-step analysis.  'We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond.  Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor.  Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue.  [Citation.]' " (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 975.)  "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)

The appellant has the burden to show error, even if the appellant did not bear the burden in the trial court, and " 'to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' "

(*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.) Further, "an appellant must present argument and authorities on each point to which error is asserted or else the issue is waived." (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867.) Matters not properly raised or that lack adequate legal discussion will be deemed forfeited. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.)

**2. The court properly granted the Forum's motion for summary judgment.**

**2.1. Williams's Complaint**

As noted, we first consider the allegations of Williams's complaint to determine the scope of the issues.

Williams alleged causes of action for negligence and premises liability. As the party with the ultimate burden at trial, therefore, Williams would be required to establish that the Forum had actual or constructive notice of the spill.

Williams alleged that the Forum "fully and well knew, or should have known in the exercise of reasonable care, that the structures and/or components and/or other parts of said building were in a dangerous and defective and unsafe condition, and a menace to Plaintiff and others lawfully on said premises." She further alleged that the Forum was maintained in "a dangerous, defective, and unsafe condition in conscious disregard for the risk of harm to invitees thereon. By reason of said carelessness, negligence and conscious disregard of the Defendants, and each of them, said premises were unsafe and dangerous to the general public and specifically Plaintiff," and the Forum "failed to warn Plaintiff of said dangerous, defective and unsafe condition,

6

although said Defendants, and each of them, knew of said condition."

These allegations sufficiently allege the duty element of negligence and premises liability.

### 2.2. The Forum's Evidence

As the moving party, the Forum had the initial burden to show that Williams's claims have no merit—that is, that one or more elements of the causes of action could not be established, or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o); see *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.) "If a defendant's moving papers make a prima facie showing that justifies a judgment in its favor, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact." (*Jones*, at p. 945; *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 965.)

The Forum argued that Williams's complaint and discovery responses failed to demonstrate actual or constructive notice. When asked to "state all facts which support [Williams's] contention that Defendants had actual notice of the dangerous condition alleged," Williams responded: "However, without waiving said objections, Defendant owned, maintained, and/or controlled the premises and therefore owed a duty of reasonable care in order to ensure its premises were in a safe condition. Defendant left a slipping hazard on the ground unattended where Plaintiff slipped and fell. Defendant failed to properly warn, secure, block off the area, and put up any caution signs and/or warning devices alerting customers about a dangerous condition that existed on the floor. Defendant's negligent conduct caused Plaintiff to slip and fall, thereby causing Plaintiff to sustain

7

severe injuries.  Responding Party reserves the right to amend and/or supplement this response as discovery and investigation are ongoing."

The Forum explained that Williams provided this same response for two other special interrogatories on the same subject, never identifying the facts supporting her allegation that the Forum knew or should have known about the spill. Specifically, there were no facts alleged in the complaint or discovery responses indicating how long the condition existed. Nor had Williams sought to conduct additional discovery or to amend her discovery responses.

The Forum also submitted a declaration by its Director of Building Operations describing policies and procedures for addressing spills that might create a danger for guests.  The Forum contracts with ABM Industries (ABM) for maintenance and custodial services.  ABM typically cleans the aisle stairways before each event.  Before the venue opens to guests, there are usually two inspections, and any spill or debris identified is immediately corrected by ABM staff.  The declaration did not identify any procedures for inspection by ABM during the shows.

The Forum contracts with Contemporary Services Corporation (CSC) to provide ushers, security, and crowd management personnel.  During the shows, ushers are positioned at the landings at the bottom of each stairway aisle, with access to absorbent spill pads at each landing.  Ushers and security staff are trained in the use of the absorbent spill pads.  During shows, ushers and other building personnel "are trained to immediately identify and report to LA Forum command center any spills or debris.  This includes spills brought to the attention of ushers and other building personnel by guests or other persons on the

premises.  The LA Forum command center then notifies the on-site ABM dispatcher who immediately dispatches an ABM rover or spill team to the identified site."  After spills are identified, personnel remain at the area to warn patrons until it is cleaned or other warning signs or devices are placed to restrict the area and warn patrons.

The court below concluded that the Forum had produced sufficient evidence to meet its initial burden of production on the constructive notice issue, i.e., that Williams could not establish that the Forum had notice of the spill.  Williams does not contend the court erred on this point, and, therefore, has forfeited any argument that the burden should not have shifted to her.

### 2.3.  Williams's Evidence

Williams did not provide additional evidence in her opposition to the Forum's motion, instead opting to rely on competing inferences from her deposition and the Forum's evidence.  She contended that the considerable quantity of liquid on the floor, its stickiness, and the presence of two ushers nine or ten feet away raised a reasonable inference of actual notice. Further, Williams testified that the ushers saw her fall, which she argued supported an inference that they were looking up the stairs and directly at the hazardous area.  Williams also asserted that the presence of both beer and soda indicated that there had been more than one spill over a period of time.  And, she claimed, it was reasonable to infer that since the ushers were trained to identify spills during shows, including in dark conditions, they should have spotted this one.

Williams also argued that the Forum's evidence— particularly the declaration by its building manager—supported a series of inferences about its inspection procedures.  She noted

that although the stairs are inspected and cleaned before a show, and although there are policies about cleaning spills *if they are noticed* during a show, the building manager did not identify any policies for *inspecting* the stairs during an event.

The Forum, in its reply, argued that because "the alleged spill was not so obvious or conspicuous to plaintiff," who was looking directly at the ground, it was not reasonable to infer that the ushers would have seen it from the bottom of the stairs.

### 2.4. Law of Premises Liability

"It is well established in California that although a [business establishment] is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe. [Citations.] In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages. [Citations.] A plaintiff meets the causation element by showing that (1) the defendant's breach of its duty to exercise ordinary care was a substantial factor in bringing about plaintiff's harm, and (2) there is no rule of law relieving the defendant of liability. [Citation.] These are factual questions for the jury to decide, except in cases in which the facts as to causation are undisputed. [Citation.]" (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*).)

The plaintiff need not show that the defendant possessed actual knowledge of the dangerous condition "where evidence suggests that the dangerous condition was present for a sufficient period of time to charge the owner with constructive knowledge of its existence. Knowledge may be shown by circumstantial evidence 'which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts.' [Citation.]" (*Ortega*, *supra*, 26 Cal.4th at pp. 1206–1207.)

An "owner exercises ordinary care by making reasonable inspections of the portions of the premises open to customers, and the care required is commensurate with the risks involved. [Citation.]" (*Ortega, supra*, 26 Cal.4th at p. 1205.) "Whether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a question of fact for the jury, and the cases do not impose exact time limitations. Each accident must be viewed in light of its own unique circumstances. [Citation.] The owner must inspect the premises or take other proper action to ascertain their condition, and if, by the exercise of reasonable care, the owner would have discovered the condition, he is liable for failing to correct it. [Citation.]" (*Id*. at p. 1207.)

Plaintiffs must produce "evidence that the dangerous condition existed for at least a sufficient time to support a finding that the defendant had constructive notice of the hazardous condition. [Citation.]" (*Ortega, supra*, 26 Cal.4th at p. 1212.) If the plaintiff cannot make this showing, the defendant is entitled to judgment as a matter of law. (*Id*. at p. 1207.) But a plaintiff may demonstrate that the business-owner "had constructive notice of the dangerous condition if they can show that the site had not been inspected within a reasonable period of time so that a person exercising due care would have discovered and corrected the hazard. [Citation.] In other words, if the plaintiff[ ] can show an inspection was not made within a particular period of time prior to an accident, they may raise an inference the condition did exist long enough for the owner to have discovered it. [Citation.]" (*Id*. at pp. 1212–1213.)

11

### 2.5. Williams did not present sufficient evidence to create a triable issue on notice.

*Ortega* observed that the " 'exact time the condition must exist before it should, in the exercise of reasonable care, have been discovered and remedied, cannot be fixed, because, obviously, it varies according to the circumstances. A person operating a grocery and vegetable store in the exercise of ordinary care must exercise a more vigilant outlook than the operator of some other types of business where the danger of things falling to the floor is not so obvious.' [Citation.]" (*Ortega*, *supra*, 26 Cal.4th at p. 1210.) We agree with Williams that the Forum—a popular concert venue filled with thousands of fans, who are encouraged to purchase alcohol and other drinks in open cups, then carry those cups up steep stairs, in the dark, back to their seats—is at least as dangerous as a grocery store. Indeed, Williams testified that the venue was dark, and a lot of people were drinking. As such, the Forum owed a heightened duty of care to concertgoers.

In her opposition to the Forum's summary judgment motion, Williams stressed that "the defendant outlines a number of policies and procedures [in the building manager's declaration]. However, these polices and procedures are silent on very important matters. (1) No procedure is outlined for the inspection of walkways, including darkened stairs, during a show—only before. (2) No policy or procedure is outlined [directing] the usher, security guard, or other personnel [to] scan or keep watch for hazardous floor conditions such as spilled drinks on the stairs. (3) No job or duty description is provided for the two LA Forum personnel who are positioned at the bottom of the landing—including whether or not they are trained to [look]

12

for themselves to identify spills.  The separate statement only says they are trained if a customer or other third party informs them of a spill."

It may well be, as Williams suggests, that the Forum doesn't require employees to inspect common areas for spills during shows.  Or, it may be that there was such a policy, and it wasn't followed.  Likewise, as Williams argued below, the Forum's "separate statement is devoid of facts regarding what, if anything, the [ushers at the bottom of the stairs] did or did not do, did or did not see on the date of the incident."  Such facts may well have shed light on whether the area had been properly inspected within a reasonable time—and, in turn, whether the Forum exercised reasonable care.

In short, Williams raises legitimate questions—questions her attorneys could have sought answers to in discovery.  But the absence of evidence is not evidence of absence.  And by the time the burden of production shifted to Williams, she was required to produce evidence, not just point out the deficiencies in the Forum's submission.  Without answers to the questions Williams raises, we are left with speculation, not inferences—and speculation is not enough.  This is not a case of strict liability.  Williams had to present more than evidence that there was a spill that caused her to slip.

We also disagree that Williams's deposition testimony, without more, created a triable issue of material fact.  As discussed, Williams testified that she slipped on a large pool of sticky liquid that she believed to be a mixture of soda and beer.  There were ushers nine or ten feet away, at the foot of the stairs.  They saw her fall.  From these facts, Williams invites us to infer

13

that the ushers had actual or constructive notice of the dangerous condition.

Certainly, the liquid's stickiness might indicate that it had been on the ground for some amount of time.  Williams relies on *Louie v. Hagstrom's Food Stores, Inc.* (1947) 81 Cal.App.2d 601, to support the proposition that a spilled substance's stickiness constitutes "circumstantial evidence from which the jury could have inferred that the syrup was on the floor for a sufficient time so that, in the exercise of reasonable care, the defendant should have discovered it and remedied the defective condition." (*Id.* at p. 608.)  But Williams does not acknowledge that in *Louie*, there was also "evidence that no employee of defendant examined the front entrance for between 15 to 25 minutes immediately preceding the accident." (*Ibid*.)  Here, Williams has presented no evidence to establish when the area had last been inspected.  Nor has she presented any evidence about how long spilled soda or beer takes to grow sticky.

We are thus left with the question of whether the ushers should have seen the spill.  We cannot conclude that the spill was obvious enough to constitute constructive notice.  The Forum was dark, and the stairs were steep.  Because Williams was sitting at the top of the section and the spill was only a few steps below her row, the spill must also have been fairly high up.  Importantly, Williams, who was looking at her feet, did not see the spill until it was too late to avoid it.  Without more, it is not reasonable to infer that the ushers, who were nine or ten feet away at the bottom of stairs, should have seen the spill or had a vantage point from which the spill was visible.

14

Accordingly, we agree with the trial court that there is no triable issue of material fact on the question of notice and conclude summary judgment was properly granted.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent Forum.


HARUTUNIAN, J.*

We Concur:


GRIMES, Acting P. J.


WILEY, J.

---

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.